IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| _____ ) | Civil Action |
| ) | No. 3:14-cv-1152 |
| THE CONNECTICUT LIGHT AND POWER ) | |
| COMPANY, ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| VERIZON NEW YORK INC., ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM IN SUPPORT
## OF PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS

The Plaintiff, Connecticut Light & Power Company ("CL&P") respectfully submits this

Memorandum in support of its Motion for Discovery Sanctions.  For the reasons stated below,

CL&P requests that the Court impose the sanctions requested in CL&P's Motion because

Verizon New York Inc. ("Verizon") has disregarded its obligations under the Federal Rules of

Civil Procedure governing discovery to conduct a thorough search for information and

documents in its possession, custody or control and to produce them.  As a result of Verizon's

failures in this regard, the fairness of the process has been compromised and CL&P's ability to

prosecute this case has been undermined.

At the outset, and before addressing the particulars of Verizon's conduct, Plaintiff would

like to state clearly and emphasize that it does not attribute Verizon's conduct *in any way* to

defense counsel and nothing in this Motion should be construed as an allegation that defense

counsel has intentionally or even negligently violated their ethical responsibilities.  To the

contrary, based on cooperative and open conversations between counsel, the Plaintiff believes

without hesitation that defense counsel has employed diligent and good faith efforts to obtain

from his client information responsive to CL&P's discovery requests.

In further support of this Motion, the Plaintiff states as follows:

## Background

1.   Background Facts

This action arises out of an accident which occurred on January 30, 2012, at the

intersection of Riversville Rd. and Sherwood Ave. in Greenwich, Connecticut,  in which a truck

clipped low hanging telephone wires and pulled down a utility pole heavily laden with electrical

distribution equipment.  CL&P alleges in the First Amended Complaint that its damages were

caused by Verizon's breach of its contractual obligations to maintain in good condition its

telecommunications wires attached to utility poles owned jointly by the parties.   Specifically,

CL&P alleges that Verizon failed to attach properly its cables to the two utility poles at either

side of the intersection and to maintain those wires at a sufficient height above the public

roadway.  CL&P seeks damages as a result of Verizon's various breaches of its contractual

obligations to install and maintain properly its facilities according to the requirements of the

parties' contract.

In addition, CL&P is seeking indemnification under the contract because, CL&P alleges,

Verizon failed to transfer its wires to a replacement pole before the accident.  Specifically, more

than two years before the accident, CL&P replaced one of the poles to which the subject wires

were attached.  Generally, during the pole replacement process, a new pole is set next to the old

pole and the wires attached to the old pole are transferred methodically by the parties from top

down before the old pole is removed.  This process (which is governed by the parties' contract)

takes time and the poles remain side by side (a 'double pole') until all wires are transferred and

{Client Files/LIT/311789/0108/PLD/B0557225.DOCX;2}

the old pole removed.  As part of the process of replacing the pole in this case, CL&P has record of notifying Verizon in 2009 that the pole had been replaced and to transfer Verizon's wires as required by the parties' contract.  On the date of the accident, more than two years later, Verizon still had not transferred its wires to the new pole.

The accident necessitated a major response from the utility companies, as the broken pole and numerous utility lines hung precariously over and littered the roadway.   It has always been clear that Verizon responded to this accident and conducted significant repairs to its cables, wires and telecommunications infrastructure which was involved in the accident.  The police report from the accident indicates that Verizon crews responded to the scene shortly after the accident. Photos from the scene show extensive damage to telephone cables—all of which was subsequently repaired.  The driver of the truck testified at his deposition that he observed Verizon crews thereafter making repairs.  News reports within days of the accident discussed delays in reopening the streets due to Verizon's work at the scene.  All of Verizon's telecommunications equipment was moved from the broken pole and reinstalled on the new pole. At the other end of the wire span at the 'double pole', Verizon's equipment was also transferred and reinstalled on the new pole.  This can all be confirmed by photographs from the scene and thereafter.

Despite all of this, as discussed in more detail below, Verizon incredibly has claimed for more than one year in this litigation to have NO INFORMATION OR DOCUMENTS WHATSOEVER about the accident, communications about the double pole from before the accident, damage caused in the accident, or repairs performed as a result of the accident. Verizon's denial of having any information has been the core of its defense—claiming that it was never notified about the double pole before the accident and denying that its wires were even

involved in the accident.  What is clear, however, is that Verizon's position in this regard derives entirely from its failure to conduct a diligent and thorough search for information and documents and just pretend that it has no information or documents.

2.    Verizon's Responses to Discovery

Shortly after Verizon answered the Complaint denying knowledge or information concerning the accident, CL&P served Requests for the Production of Documents and Interrogatories.  Verizon responded to those requests in January, 2015.

In its Rule 34 requests, CL&P sought, as is relevant for purposes of this Motion, the following documents:

1.   Documents concerning the Accident (Request 3)

2.   Communications concerning the Accident (Request 4)

3.   Documents concerning damage caused in the accident or repairs performed as a result of the Accident (Request 7)

4.   Accident/investigation reports (Requests 8 & 9)

5.   Photographs or video of the accident site from before or after the accident (Request 11)

6.   Documents concerning communications with CL&P and other third parties prior to the Accident about the wires attached to the pole (Requests 15- 16)

7.   Documents concerning installation or maintenance of its wires at the accident location (Request 21)

8.   Work Orders for work performed at the accident location before or within one month after the accident (Request 25)

In response to those requests, Verizon produced the police report (which was previously provided to Verizon by CL&P), the contract between the parties, a diagram of the intersection prepared by a Verizon engineer in response to CL&P's claims, an indecipherable diagram apparently showing Verizon's infrastructure at the location, and three small sections from unidentified databases containing cursory information about the poles involved in the accident, and nothing else.  See Exhibit A.  Despite obviously having performed work at the site (its telecommunications equipment and cables did not repair themselves and did not move themselves onto the new poles), Verizon denied having any documentation relevant to the accident, the damage resulting from the accident or the repairs it performed.  It denied having any documentation concerning communications with CL&P about the poles and wires at those locations before or after the accident.  It further denied having any documents concerning the installation or maintenance of the poles or wires attached to the poles.  See Defendant Verizon New York Inc.'s Responses to the Plaintiff's First Request for the Production of Documents, attached hereto as Exhibit B.

Through interrogatories, CL&P similarly sought the following information:

1.  Information about the wire was struck in the accident (Interrogatory #6, #8, #9)

2.  Information about damage caused to Verizon's equipment in the accident (Interrogatory #7)

3.  Information concerning maintenance or repairs performed by Verizon before or after the accident (Interrogatory #12).

Verizon provided similar responses, denying any knowledge or information responsive to the interrogatories: "Presently, the Defendant has no documentation in its care, custody or control relative to this interrogatory.  After making a diligent inquiry, the Defendant cannot respond to

this interrogatory."; "The Defendant has no written report as to which wires were hit in the accident… Presently, the Defendant does not possess information to answer this interrogatory."; "Presently, the Defendant cannot answer this interrogatory as it is still in the process of discovery."; "The Defendant has no documentation in its care, custody or control relative to this interrogatory and presently has no knowledge regarding the same…"  See Exhibit C, Verizon New York's Answer to the First Set of Interrogatories Propounded by the Plaintiff, The Connecticut Light and Power Company, Answers: 6, 7, 8, 9, & 12.


3.      Attempts to Remedy Verizon's Deficient Responses

Counsel for the parties had several conversations concerning Verizon's responses to the discovery requests.  Counsel for Verizon indicated that he had made multiple good faith inquiries with Verizon but that Verizon assured him that it had searched for and produced all responsive information and documents in its possession, custody or control.  On July 7, 2015, prior to taking Verizon's Rule 30(b)(6) depositions, counsel for CL&P sent a letter to the Defendant pursuant to Local Rule 37(a) identifying specifically the information which CL&P believed existed but had not been produced by Verizon.  See Exhibit D.[1]  The letter requested that Verizon redouble its efforts to conduct a diligent search for its records and that counsel verify the scope and adequacy of the search.

Subsequent to that letter, counsel for the parties had several additional good faith and cooperative conversations about Verizon's discovery responses.  Counsel for Verizon indicated that, after further discussions with his client, Verizon had located two computer database references to the replacement of the subject poles.  Counsel provided two 'screen shots' of those database references.  See Exhibit E.   However, those database references were created several

---

[1] A second copy of the letter was emailed to counsel on August 20, 2015.

months after the accident and simply noted that all work replacing the poles had been completed.
Counsel for Verizon reiterated that Verizon had assured him that it had exhausted all measures to
locate additional responsive documents.[2]

4.      Verizon's 30(b)(6) Deposition

Verizon's Rule 30(b)(6) deposition, which had been rescheduled by agreement several
times, commenced on August 14, 2015.  In light of the lack of information produced by Verizon,
the Rule 30(b)(6) notice required Verizon to produce a witness to testify relative to Verizon's
efforts to locate documents and information responsive to the written discovery requests.  See
Exhibit F, *Rule 30(b)(6) Deposition Notice, topic 7*. Verizon designated Mr. Ken Pastore to
testify concerning its efforts to locate relevant and responsive documents.  See Exhibit G,
*Deposition Transcript of Ken Pastore*.  At the outset of the deposition, counsel for Verizon
reiterated as follows:

> Mr. Pastore is going to testify with respect to topics 1, 7, 11, 12, 13, 14,
> 15, 16, 17, 18, 19, 23 and 24. … As you know through communications Verizon
> has no records relating to this accident. You can ask Mr. Pastore about Verizon's
> attempt to obtain the same. Some of these efforts to obtain and locate witnesses
> relating to the accident was done prior to Mr. Pastore's assuming this position
> and were done by Mr. Quintero but he will basically tell you we have no information about
> the accident other than what was produced.

See Id. pp. 4-5.  Consistent with counsel's statement, Mr. Pastore, as Verizon's designee testified
concerning the scope and results of Verizon's efforts to locate relevant and responsive
documents as follows:

- pp. 14-16; 19-20: Verizon searched its electronic work order databases for telephone line
  repairs ("V-Repair") and  for engineering work orders ("V-Build") relative to the location
  where the accident occurred and found nothing.  Mr. Pastore testified, however, that he

---

[2] Verizon did additionally produce its "Blue Book" construction manual  which had previously been identified by
Verizon as responsive but withheld on the basis of confidentiality.

did not know if either system contained records from 2012, when the accident occurred, or earlier.  In any event, no records from either system were found or produced.

- p.27; 45-46: Verizon has a call center that receives emergency calls relating to accidents, such as the one that is the subject of this case, but he does not know if its records were searched for responsive documents;

- p. 25, 27: Verizon repair crews keep daily time sheets for the work they perform.  Mr. Pastore did not know if the local crews' time sheets had been searched for work performed in response to this accident but, in any event, none was located or produced.

- p. 27:  Verizon maintains GPS records for its construction and repair trucks.  Mr. Pastore did not know if Verizon had searched its GPS records.

- p. 31: Initially, Mr. Pastore did not know whether Verizon searched for records concerning its work transferring its wires on the 'double pole' which is the subject of Count II.  However, after Verizon's counsel indicated that another Verizon employee had located the screenshot contained in <u>Exhibit E</u> hereto, Mr. Pastore limited his answer and testified that several Verizon employees had searched for "engineering work orders" relative to the double pole.

- pp. 30-31: Mr. Pastore did not know whether Verizon searched for records concerning its work transferring its wires on the pole which was broken in the accident.  He admitted that no such documents were produced.

- p. 27-28: Verizon had not located a single document relating to its response to the accident;

- p. 41-42: Verizon searched its pole records databases, but he did not know the results of those searches.

8

- 44:  Several Verizon employees purportedly made efforts to find documents responsive to CL&P document requests numbered 15, 16, 18 and 32, but he did not know the scope or extent of those efforts.

- 59-60: Mr. Pastore testified that the only document Verizon located relative to its work after the accident was a "request for transfer" which CL&P sent to Verizon several months after the accident.  The existence of this document had never previously been disclosed by Verizon and it had not been produced by Verizon.

- 60:  Verizon had not located any employees with knowledge of work performed by Verizon in response to this accident.

- 63-64:  Verizon searched its "splicers'" records (the workman who connect or "splice" two cables together) for work relative to replacing the cable damages in the accident and none was found.

Mr. Pastore was also designated to testify on Verizon's behalf concerning Verizon's response to the accident and the repairs it performed as a result of the accident.  (Topic 23).  Mr. Pastore testified that Verizon had not located any documentation concerning the repairs or any employees who had any knowledge of any work performed by Verizon in response to the accident.  E.g., id. pp. 60, 64.

After Mr. Pastore testified, Verizon produced another witness to testify on its behalf with respect to topics 2, 3, 20 & 21 of the Rule 30(b)(6) notice (generally facts relating to Count II-- Verizon's failure to transfer its wires on the double pole prior to the accident).  See Exhibit H, *Deposition of David Bisantz*.   Incredibly, at the beginning of his testimony, Mr. Bisantz produced from his backpack a file with relevant and responsive documents which had not

previously been disclosed and which Mr. Pastore had just previously testified did not exist.  Id.

pp. 19-20; 37 (and Exhibit 12); 51, 53 (and Exhibit 13). Specifically, Mr. Bisantz produced

documents purportedly sent to Verizon by CL&P *after* the accident regarding the replacement of

both poles requesting Verizon to transfer its wires to the new poles.  See id.[3]  Importantly, CL&P

contends that similar documentation was sent to Verizon more than two years before the accident

notifying Verizon of the pole replacement and requesting that Verizon transfer its wires to the

new pole.  Mr. Bisantz, however, did not produce any such documents from before 2012 and

claimed he could not find them (even though he did not even speak to Verizon's employee who

receives and files those documents).  Id. at 41.  Mr. Bisantz also pulled from his backpack

Verizon's "field notes" from April 2012 assessing the work left to be completed on the double

pole.  These notes had never previously been disclosed to CL&P and, indeed, Verizon had

specifically denied their existence on multiple occasions.

 During his testimony, Mr. Bisantz further revealed the existence of *even more* important

documentation which had not (and still has not) been produced by Verizon.  Specifically, Mr.

Bisantz testified that he searched Verizon's engineering work order database shortly before the

deposition and reviewed the work order related to the replacement of the double pole and the

transfer of Verizon's facilities to the new pole.  Id.  at 45-49.  **This is the same database that

Mr. Pastore testified Verizon's employees, including Mr. Bisantz, had searched without

success.  The records reviewed by Mr. Bisantz are the same documents Verizon has

claimed consistently throughout discovery *do not exist*.**  Notwithstanding Mr. Bisantz's

testimony about having reviewed the engineering work order information, Verizon still has not

produced that work order, documentation pertaining to the work Verizon performed pursuant to

---

[3] Mr. Bisantz admitted that Verizon had not even searched for those records until a few weeks before his deposition.
Id. p. 49.

{Client Files/LIT/311789/0108/PLD/B0557225.DOCX;2}

that work order, or any other information about the work order or the work performed by Verizon.

5.     <u>Documents Produced by Verizon After the Deposition</u>

More than one month after the depositions of Mr. Pastore and Mr. Bisantz, Verizon produced 22 pages of time sheets for Verizon employees working at the accident scene between January 30, 2012 (the date of the accident) and February 3, 2012.   The time sheets reveal that, in fact, at least **FIFTEEN** different Verizon employees, utilizing at least **TEN** different construction vehicles, worked at the accident site over the course of **FIVE** days immediately after the accident.  See <u>Exhibit I</u>.

## **<u>Argument</u>**

Verizon should be sanctioned for its failure to comply with its discovery obligations under Rules 26, 33 and 34.  See, e.g., <u>Southern New England Tel. Co. v. Global NAPs Inc.</u>, 624 F.3d 123, 144 (2d Cir. 2010) (the district court has wide discretion in determining sanctions and "is free to consider 'the full record in the case in order to select the appropriate sanction.'"); <u>Guidry v. Continental Oil Co.</u>, 640 F.2d 523, 533 (5th Cir.) (<u>cert. denied</u>, 454 U.S. 818, 102 S.Ct. 96 (1981)) (A party may be sanctioned for disregarding discovery obligations without a direct violation of a court order); <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 49, 111 S. Ct. 2123, 2135 (1991) (district courts have has inherent power to levy sanctions in response to abusive litigation practices during discovery).

Verizon misled CL&P and has undermined CL&P's ability to prosecute this case by failing to produce relevant documents, to disclose relevant information, and to identify and produce witnesses competent to testify in response to the Rule 30(b)(6) notice.  Verizon has and

continues to defend this case by refusing to admit that its wires were involved in the accident and claiming never to have received notice from CL&P before the accident of the pole replacement and the need to transfer its wires to the replacement pole.  In response, CL&P has spent the better part of one year conducting discovery – both written discovery and depositions – only to receive one consistent response:  Verizon has no documents or information relevant to this case.

Verizon's claims in this regard are indisputably false.  For one, the belated disclosure of Verizon construction crew time sheets reveals that Verizon's answers to interrogatories, Rule 34 responses, and Mr. Pastore's deposition testimony were all unconditionally incorrect.  It is now beyond dispute that Verizon was, in fact, at the scene immediately after the accident and for the next four days conducting extensive repairs to its equipment.  In light of the fact that there are five days' worth of time sheets accounting for dozens of hours of work time, it is further inconceivable that there are no additional documents (such as materials requisition documents, engineering work orders and/or shift summaries) pertaining to the work performed or Verizon employees knowledgeable about the damage caused in the accident and repairs necessitated.  But supposition in this regard is unnecessary, as Mr. Bisantz stated frankly at his deposition that he had reviewed the very engineering work order documents that Verizon denies exist.  Likewise, Verizon also wrongfully failed to disclose prior to Mr. Bisantz's deposition the existence of communications from CL&P to Verizon concerning the double pole.   There is no question now, based on Mr. Bisantz's admissions and late disclosures during his deposition, that those documents exist and were in Verizon's possession, custody or control prior to that deposition.  Moreover, it is not clear that Verizon has still not produced the full extent of the documents and information in its possession, custody or control—having, by its own admission, failed even to

{Client Files/LIT/311789/0108/PLD/B0557225.DOCX;2}

inquire of the person who handled and maintained communications from CL&P about the existence of the documents received from CL&P about the double pole prior to the accident.

Importantly, there is no justification for Verizon's failure to produce these documents and information early in discovery or, at the latest, before the commencement of its Rule 30(b)(6) deposition.[4]   Clearly, had Verizon conducted even a cursory search in response to CL&P's discovery requests (as was done by Mr. Bisantz just before his deposition), it would have located the relevant documents and identified employees with relevant information.  By virtue of the recent production of time records and documents at Mr. Bisantz's deposition, there can be no question that Verizon has had the information all along but either failed to look for it or, worse, intentionally concealed it.

CL&P has suffered significant prejudice as a result of Verizon's malfeasance.  For one, CL&P has wasted its time and money engaging in fruitless written discovery and depositions.  The responses to CL&P's interrogatories and requests for admissions are incomplete, demonstrably untrue and of no utility to CL&P.   Likewise, the majority of the deposition testimony obtained from Mr. Pastore and Bisantz is useful only for purposes of showing that Verizon has not truthfully and completely answered the questions to which CL&P is entitled answers.  More importantly, however, Verizon is obstructing CL&P's ability to prove its case by failing and refusing to produce discoverable information and make admissions which would be harmful to its defense.  The United States Court of Appeals has recognized "the 'fundamental maxim of discovery that '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. … 'To that end, either party may compel the other to disgorge whatever facts he [or she] has in his [or her] possession.'" S.E.C. v. Rajaratnam, 622 F.3d 159,

---

[4] To the extent Verizon needed additional time prior to the deposition to locate documents, CL&P would have accommodated the request—as it has done on several occasions in this case.  Indeed, counsel have worked amicably and cooperatively together and accommodated each other's various requests for extensions of time.

{Client Files/LIT/311789/0108/PLD/B0557225.DOCX;2}

180-81 (2d Cir. 2010) (and cases cited and quoted).  Here, by failing to conduct an adequate search for relevant documents and information and produce the same to CL&P, Verizon has fundamentally undermined CL&P's position in this case by creating a record which does not accurately reflect the true facts and circumstances.

CL&P respectfully suggests that the sanctions requested in the Motion are appropriate under the circumstances.  The Court should award CL&P its reasonable attorney's fees and costs because the majority of the expense involved in conducting discovery to date has been rendered entirely unproductive by Verizon's conduct in failing to produce relevant and responsive information and testimony.  The Court should further enter an order establishing as true for purposes of this case: (a) that Verizon's wires and cables were struck by the truck in the accident, and (b) that CL&P gave notice to Verizon prior to the accident of the double pole condition and the need for Verizon to transfer its facilities to the new pole.  In the alternative of such an order, the Court could issue an order preventing Verizon from offering any evidence on these topics or contesting or challenging any such information or testimony offered by CL&P.  Such orders appropriate because Verizon is attempting to rely on the absence of documents and information to contest the key issues in the case, and the absence of such documents and information is clearly the result of Verizon's failure to comply with its legal obligations to search for them. Verizon should not be permitted to benefit so significantly from its lack of compliance with the rules.   An order preventing Verizon from using any late-produced documents in support of its defense is likewise appropriate because they should have been produced in advance of Verizon's Rule 30(b)(6) deposition so CL&P could have examined the witnesses as appropriate.  To the extent the Court does not impose the sanctions above, CL&P alternatively requests that the Court require Verizon to supplement and revise its previous discovery responses, produce witnesses

14

competent to testify on its behalf in response to CL&P's Rule 30(b)(6) notice, and award CL&P

its fees and costs in conducting this duplicative discovery.  Finally, CL&P requests that the Court

order that Verizon's failure to produce responsive documents and information, as documented

above, be admissible for all purposes at trial.

Respectfully Submitted,

THE CONNECTICUT LIGHT & POWER
COMPANY,

By its attorney,

/s/ Joshua A. Lewin
Joshua A. Lewin, Esq. (phv07056)
Dated: October 14, 2015        jlewin@bowditch.com
One International Place, 44th Floor
Boston, MA  02110
Tel:  (617) 757-6523
Fax:  (508) 929-3184

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2015, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be send by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

/s/ Joshua A. Lewin

15