IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

THE CONNECTICUT LIGHT AND POWER
COMPANY,
    Plaintiff

v.                                                                     Civil Action No. 3:14-cv-1152-SRU

VERIZON NEW YORK, INC.,
    Defendant

## DEFENDANT, VERIZON NEW YORK, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS

## INTRODUCTION

Defendant, Verizon New York, Inc. (hereinafter "Verizon'), vehemently disagrees with CL&P's characterization of Verizon's efforts to locate information regarding this incident. Part of the problem in locating information is due to CL&P's tardiness in presenting a claim and filing a lawsuit.

Upon receiving notice of this claim, Verizon and its representatives made diligent efforts to locate information relevant to the incident. Following the commencement of this suit and continuing to date, Verizon has made timely and continuous efforts to locate information regarding this incident.

This is not a situation where Verizon has destroyed documents or has refused to produce documents. The simple fact of the matter is that Verizon does not have the information CL&P is requesting. The Verizon supervisors responsible for the area when the accident occurred were not employed by Verizon when CL&P presented its claim in May 2013.

1

To evidence its concerted efforts to locate information, Verizon is producing communications, which it believes are privileged. Certain aspects of these communications are redacted because counsel believes that they contain privileged information relative to its defenses. In this regard counsel is amenable to producing unredacted copies to the court for an in camera review should that become an issue.

Further, Verizon submits affidavits from various supervisory representatives demonstrating the efforts it has made to locate information relating to this accident. It is also significant to note that Verizon's 30(b)(6) depositions have not been completed due to time constraints and that subsequent thereto Verizon has gone back again to search for documents and information. Likewise, the 30(b)(6) depositions of CL&P have also been continued on multiple occasions.

Background

This matter has its genesis in accident that occurred on January 30, 2012. A commercial flatbed truck with a mounted drilling apparatus was traveling south on Riversville Road intending to make a right turn onto westbound Sherwood Ave in Greenwich, Connecticut. As the driver negotiated his turn, the mounted drilling apparatus snagged a low wire that was spanning across the roadway from east to west between poles. The truck continued to make the turn, pulling the wires that stressed the pole number 69171 located at the northeast corner of Riversville Road ultimately causing the pole to fracture 15 feet up from the base.

The truck driver, who caused the accident, took photographs and videos contemporaneous with the event, which he produced in discovery.

By coincidence a CL&P truck was a short distance behind the vehicle that caused the accident. Two CL&P technicians were at the scene of the accident within a minute of the incident.

Due to the nature of the equipment and the configuration of the attachments to the utility pole, CL&P performed all of the initial repair work. CL&P set the replacement poles at the accident scene.  CL&P then attached its wires and transformers to the utility poles.

The other communication entities that had wires on the poles, reattached their wires, after CL&P's work was completed.

Verizon was the last entity to perform any work at the location. Verizon's work consists of reattaching its communication wires between the utility poles.

In sum, this is not a situation where Verizon has access to factual information regarding the accident, which is unavailable to CL&P.

Verizon has never denied being at the scene after the incident and performing repairs to its wires. However, Verizon never prepared any damage claim forms or reports of the accident.

We must be cognizant of the fact that reattaching communication wires to utility poles is not a memorable event for a Verizon technician who is engaged in this task on regular basis. Concomitantly these are generally insignificant claims.

In the instant matter CL&P did not present a claim to Verizon until 16 months after the incident. A lawsuit was not commenced until 31 months after the event.

In the beginning of May 2013, Sedgwick, Verizon's claim service company, received notice of the claim by Connecticut Light and Power (CL&P).  The matter was

assigned to Jennifer Robell who began investigating this matter.   When the claim was presented, Verizon no longer employed the managers who were responsible for this area at the time of the accident.  In the course of her investigation, Ms. Robell made numerous efforts to locate information and documents relative to this file.

On May 24, 2013, Ms. Robell received information from Thomas Pecoraro, a Verizon engineer, who indicated that he had no knowledge of this incident or who was involved.  (Exhibit A, Verizon Doc., pg. 1).

On June 24, 2013, Ms. Robell had communications with Rafael Quintero who was not in charge of this area at the time of the incident, but was when the claim was presented. (Exhibit A, Verizon Doc., pg. 3).

Later that day, Ms. Robell received information from Edward Casey, a Verizon engineer, who indicated that he was not at this location at the time of the accident. (Exhibit A, Verizon Doc., pg. 5).

Additionally, and on the same day, Ms. Robell received information from James Melchione, a Verizon engineer, who indicated that he had no information or knowledge of this incident. (Exhibit A, Verizon Doc., pg. 6).

In July 2013, Mr. Quintero informed Ms. Robell that Verizon had no records of any previous low wire strikes at this location, that Verizon had no records of being on notice of any low wires at this location, that Verizon had no records of service being affected, that Verizon could not confirm whether the cable wires were low at the time of the accident as no one was there and the manager was no longer with the company. Verizon did have facilities at this location, that the height requirements were 15 feet at mid span.  (Exhibit A, Verizon Doc., pg. 7-8).

In August 2014, this matter was placed in a suit.

In November 2014, prior to any discovery being served, Mr. Quintero informed counsel that he had not been able to locate any records relative to the incident in question, that Verizon's records are kept by telephone number and he could not locate any reports of outages, that he's made inquiries with various Verizon engineers who worked in that area, that they may have had log books relative to this incident and need to search mainly through these records. Counsel was subsequently advised that Mr. Quintero could not locate these log books. Mr. Quintero indicated that he would continue his effort to locate records relative to this incident including any reports by Verizon personnel. (Exhibit A, Verizon Doc., pg. 19-20).

In November 2014, Jennifer Robell of Sedgwick contacted CRM who receives damage claim forms from Verizon. Ms. Robell was informed that there was no damage claim forms filed with respect to this incident, consistent with the information provided by Verizon. (Exhibit A, Verizon Doc., pg. 15).

On December 12, 2014, Verizon's representatives again indicated that they could not find a damage claim for this location. (Exhibit A, Verizon Doc., pg. 24).

It should also be noted that CL&P has its equipment and wires attached to the same poles as Verizon. They have no evidence that they ever notified Verizon of any low hanging wires, problems with its equipment or this damage claim.

In December 2014, Mr. Quintero indicated that he had no success locating any records relative to this incident. (Exhibit A, Verizon Doc., pg. 21-22).

In June 2015, CL&P altered its theory of liability, asserting, for the first time, that Verizon was responsible for not transferring its attachments to the poles within ninety

5

(90) days of receipt of a transfer notice in September 2010. (Exhibit A, Verizon Doc., pg. 28-29).

It is important to note that the document on which CL&P base this theory is their own document, which purportedly was in their possession before suit was commenced.

The issue with respect to the transfer notice did not arise until the end of June 2015. (Exhibit A, Verizon Doc., pg. 28-29). Shortly after being advised of this allegation, Verizon made a thorough search to find any transfer notices prior to the accident. (Exhibit A, Verizon Doc., pg. 30-31). Verizon did not locate any pre-accident transfer notices, however, Verizon did locate a transfer notice that post-dated the accident and immediately forwarded such to counsel for CL&P. (Exhibit A, Verizon Doc., pg. 32-35).

On July 23, 2015, Verizon's counsel provided CL&P's counsel the only information it had regarding the CL&P transfer notice. (Exhibit A, Verizon Doc., pg. 32-34).

Verizon has no record of ever receiving a pre-accident transfer notice. (Exhibit C, Affidavit of David Bisantz; Exhibit D, Affidavit of Bryan Hocking; Exhibit E, Affidavit of Ken Pastore).

Verizon again went back and made diligent efforts to locate the receipt of this document. (Exhibit A, Verizon Doc., pg. 30; Exhibit E, Affidavit of Ken Pastore).

CL&P moved to amend its complaint in August 2015 based upon the transfer notice that they provided to Verizon June 2015.

On August 3, 2015, prior to its deposition, Verizon attempted to locate any reports of outages by tracking data though "cable counts." (Exhibit A, Verizon Doc., pg. 39).

Again, Verizon was unsuccessful in locating any information about the incident. (Exhibit A, Verizon Doc., pg. 39).

Following the deposition of two of Verizon's designees, Verizon again went back to search for records including GPS, reports of this incident with call center (PRM) and time slips for individuals. (Exhibit A, Verizon Doc., pg. 40). It should be noted that Mr. Quintero had previously looked for call center documents and time slips. (See Exhibit B, Affidavit of Rafeal Quintero).

It was determined that Verizon has no GPS records. There is no information with the Verizon call center. Through various efforts Verizon was able to locate time slips for technicians who may have worked at that location. (Exhibit A, Verizon Doc., pg. 40-42). The time slips were subsequently provided to plaintiff's counsel.

Questions have been proposed to Verizon technicians to see whether they recall this incident. It should be noted that there are union issues with respect to approaching their technicians. The Verizon technicians who responded have no substantial knowledge of the incident. (Exhibit F, Responses from employees Barbara Storminger, Rick Moson, Mark McNab, Timothy Featherstone, Pat Odea, and John Tucker regarding any information each may posses with regard to the subject incident).

The questions counsel posed to Mr. Pastore referenced in this motion were based upon the document CL&P first provided at the end of June 2015.

It should be noted that Mr. Quintero initially handled this area for Verizon. However, Mr. Quintero was transferred to a different organization prior to Verizon's 30(b)(6) depositions. Mr. Pastore took over Mr. Quintero's role and responsibilities following Mr. Quintero's transfer and was produced as Verizon's designee.

One of the documents Mr. Bisantz produced which he discovered just prior to the deposition was a CL&P bill for setting poles, which they had never produced.

The affidavits of Mr. Quintero, Mr. Hocking, Mr. Bisantz and Mr. Pastore, considered in conjunction with the attached emails and correspondence, demonstrate that Verizon has made a diligent effort to locate information regarding this incident.

**CONCLUSION**

Verizon believes that the aforementioned evidence demonstrates that it has made substantial efforts to obtain all information relative to this incident. Verizon has not withheld any information.

WHEREFORE, the Defendant respectfully requests that this Honorable Court enter an order denying CL&P's motion for sanctions.

Date: November 3, 2015

        Defendant, Verizon New York Inc.,

        By its Attorney,

        /s/ Bruce H. Raymond
        Bruce H. Raymond, ct04981
        Raymond Law Group LLC
        90 National Drive, Suite 3
        Glastonbury, CT 06033
        Tel: (860) 633-0580
        Fax: (860) 633-0438
        Raymond@raymondlawgroup.com

        /s/ Ronald P. Langlois, Esquire
        Ronald P. Langlois, Bar #phv07062
        Langlois, Wilkins, Furtado & Metcalf, PC
        317 Iron Horse Way, Suite 203
        Providence, RI 02908
        Tel: (401) 351-9970
        Fax: (401) 274-6218
        Email: rlanglois@lwfmlaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify on this date a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Date: November 3, 2015

                                                /s/ Bruce H. Raymond
                                                Bruce H. Raymond