# EXHIBIT H



PLAINTIFF'S
EXHIBIT  D

AGREEMENT

BETWEEN

THE CONNECTICUT LIGHT AND
POWER COMPANY AND THE
NEW YORK TELEPHONE COMPANY

COVERING THE JOINT USE OF POLES

9/26/2013                301305554880001                5820130828002667
8/22/2014                301305554880001                6020140822005286
9/3/2014 12:00:00 AM        301305554880001              6020140903027978

 **THE CONNECTICUT LIGHT AND POWER COMPANY**

*A NORTHEAST UTILITIES COMPANY*

Mr Joseph P McKeehan                                        August 18, 1972
Special Studies Engineer
New York Telephone Company
140 West Street
New York, New York.  10007


Subject:   Meeting 8-15-72 between New York Telephone Company and CL&P
           Re Joint Use Procedures


Present:   For New York Telephone:        For CL&P:
              J.P.McKeehan                    TLShiveley
              WPChisholm                      CCYoung
              FTMundorff                      WRRuhlmann
              WESedor                         JJWalsh
                                              JDJoy


Subject meeting was held August 15 at the CL&P Greenwich office for the
purpose of discussing mutual items as follows:

Revision of combined reciprocal pole and guy valuations table

The latest revision of the existing table was in 1964 and the new revised
table, put into effect July 1, 1972 with the Southern New England Telephone
Company, was presented for approval.  New York Telephone said they would
review the table with their plant accounting department and advise us of
their conclusions.

New York Telephone also will send us a copy of their sole ownership joint
use agreement with Long Island Lighting Company, and they asked that we give
serious consideration to this type of agreement.

Review of billing procedures

New York Telephone requested that we consider changing to a sole ownership
joint use agreement in order to reduce the volume of paper work now required
for billing involved in making additional poles joint and for existing joint
pole replacement, using our present acceptance agreement system.

New York Telephone reported that in October 1972 they plan to change to a
mechanized work reporting system, using their computer.  They will make
further study to see if this system can be used in billing for new joint
poles and joint pole replacements.  The subject was tabled pending such
additional information.

8/28/2013

8/22/2014

9/2/2014 12:00:00 AM

301305554880001

301305554880001

301305554880001
10

5E20130828002667

6020140822005286

6020140902003255

- 2 -

Review of emergency trouble reporting and reconstruction

There was a general discussion of emergency restoration after severe storms or hurricanes, in order to provide the maximum mutual assistance and cooperation.

Review of area custody for joint poles

As Lake Avenue is the dividing line for area custody of joint poles, it was concluded that the areas and number of joint poles were approximately equal.


T L Shiveley
Superintendent, Transmission & Distribution


CCY/m
8-18-72

8/28/2013                          301305554880001                    5820130828002667
8/22/2014                          301305554880001                    6020140822005266
9/2/2014 12:00:00 AM          301305554880001              6020140902003255

## TABLE OF CONTENTS

Article Number

| | |
|---|---|
| I | Scope of Agreement |
| II | Definitions |
| III | Specifications |
| IV | General Provisions Pertaining to Joint Use |
| V | Pole Costs |
| VI | Rights-of-Way |
| VII | Rights of Other Parties |
| VIII | Assignment of Rights |
| IX | Liability Between The Parties |
| X | Taxation |
| XI | Bills and Payment for Work |
| XII | Defaults |
| XIII | Existing Agreements |
| XIV | Term of Agreement |
| XV | Waiver or Amendment of Terms or Conditions of Agreement |

Appendix Number

| | |
|---|---|
| I | Acknowledging Joint Ownership |
| II | Establishing Joint Ownership |
| III | Termination of Joint Ownership |
| IV | Custodianship |
| V | Maintenance of Poles |
| VI | Division of Maintenance Costs of Jointly Owned Poles |
| VII | Reciprocal Pole Valuation Schedule |
| VIII | Securing Rights-of-Way and Easements |
| IX | Private Property Poles |
| X | Space Allocations on Jointly Used Poles |

5/28/2013

8/22/2014

9/2/2014 12:00:00 AM

301305554880001

301305554880001

301305554880001

5520130228002557

6020140822005286

6020140902003255

12

This AGREEMENT, made as of the 1st day of January 1956, by and between The Connecticut Light and Power Company, a corporation of the State of Connecticut, hereinafter called the "Electric Company," party of the first part, and the New York Telephone Company, a corporation of the State of New York, hereinafter called the "Telephone Company," party of the second part.

WITNESSETH:

WHEREAS, the Electric Company and the Telephone Company desire to cooperate in establishing JOINT USE of their respective poles when and where JOINT USE shall be of mutual advantage, and to so adapt their requirements that, insofar as practicable, the size of JOINTLY OWNED POLES shall be kept to a minimum; and

WHEREAS, the conditions determining the necessity or desirability of JOINT USE depend upon the service requirements to be met by both parties, including considerations of safety and economy, and each of them should be the judge of what the character of its circuits should be to meet its service requirements and as to whether or not these service requirements can be properly met by the JOINT USE of poles.

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, the parties hereto, for themselves, their successors and assigns, do hereby covenant and agree as follows:

ARTICLE I

SCOPE OF AGREEMENT

A. This AGREEMENT shall be in effect within the territory consisting of that part of the State of Connecticut in which the New York Telephone Company operates and serves in the State of Connecticut.

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

301305554880001
301305554880001
301305554880001
13

5820130828002687
6020140822005286
6020140902003255

- 2 -

B.   This AGREEMENT shall cover all poles and associated guying facilities of each of the parties now existing or hereafter erected in the above territory when said poles are brought within the scope of this AGREEMENT in accordance with the procedure and terms hereinunder provided except that each party reserves the right to exclude the following from JOINT USE:

1.   Poles which in the OWNER'S judgment are necessary for its own solo use.

2.   Poles which carry, or are intended by the OWNER to carry, circuits of such a character that in its judgment the proper rendering of its service now or in the future makes JOINT USE of such poles undesirable.

3.   Guying facilities which in the OWNER'S judgment are necessary for its own solo use or are impractical for JOINT USE.

C.   Joint ownership shall be acknowledged in accordance with Appendix I.

## ARTICLE II

### DEFINITIONS

For the purpose of this AGREEMENT, the following terms, when used herein, shall have the following meanings:

ATTACHMENTS refer to crossarms, wires, cables, lamp fixtures, guy wires and all other apparatus or fixtures or appurtenances now used or hereafter used upon poles by either party in its business.

ACCEPTANCE AGREEMENT is a form signed by authorized representatives of the parties hereto indicating the number of said pole and its location, the

8/28/2013
6/22/2014
9/2/2014 12:00:00 AM

301305554880001
301305554880001
301305554880001
14

5820130528002667
6020140522005286
6020140902003255

- 8 -

pole space assigned to each party, the allocation of cost, the custodianship and other information pertinent to joint ownership, maintenance and use.

SOLELY OWNED POLE is a pole owned by only one party.

JOINTLY OWNED POLE is a pole which is used or intended to be used as the common support for the ATTACHMENTS of each party, and in which each party owns an undivided half interest.

CUSTODIAN refers to the party by mutual agreement, who assumes responsibility for the inspection, condition and maintenance of a JOINTLY OWNED POLE.

JOINTLY USED ANCHOR WITH ASSOCIATED ROD is a guy anchor with rod used in conjunction with one or more guys as a common support for a JOINTLY OWNED POLE and the ATTACHMENTS of both parties.

JOINTLY USED GUY is a guy used as a common support for a JOINTLY OWNED POLE and the ATTACHMENTS of both parties.

JOINT USE refers to the placing and maintaining of ATTACHMENTS of each party upon the same pole or poles; it also refers to the common use of anchors and associated rods, guys or both.

LICENSEE is the party making and maintaining ATTACHMENTS on poles of the OWNER.

NORMAL POLE - A NORMAL POLE for the purpose of division of cost shall be a 35 ft. or 40 ft. pole on a highway or a 30 ft. pole on private property for an individual customer.

STANDARD SPACE FOR ATTACHMENTS. Unless other space allocations are specified herein, there shall be reserved on the poles covered hereby, space as allocated in Appendix X.

OWNER is the party hereto holding full title to a pole.

REARRANGING refers to the reconstruction or relocation of

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

301305554880001
301305554880001
301305554880001
15

5820130828002667
6020140922005286
6020140902003255

– 4 –

ATTACHMENTS on a JOINTLY OWNED POLE to use space more economically or to bring them into conformity with specifications mutually agreed upon by both parties as suitable for JOINT USE, including the necessary tree cutting or trimming due to the changed position of the ATTACHMENTS and obtaining the necessary rights for such.

TRANSFERRING refers to the moving of ATTACHMENTS from one pole to another and placing them upon the new pole in accordance with specifications mutually agreed upon by both parties as suitable for JOINT USE, including the necessary tree cutting or trimming due to the changed position of the ATTACHMENTS, and obtaining the necessary rights for such.

ARTICLE III

SPECIFICATIONS

All construction in connection with the JOINT USE of the poles covered by this AGREEMENT shall be in conformity with Public Utilities Commission, State of Connecticut, Docket 5700, Part 2, or subsequent revisions thereof.

ARTICLE IV

GENERAL PROVISIONS PERTAINING TO JOINT USE

A. Jointly used poles existing on the effective date of this AGREEMENT will be made JOINTLY OWNED POLES in accordance with the provisions of the letter agreement between the parties, dated March 30, 1956 (a copy of which is attached hereto and marked Exhibit A) and the other provisions of this AGREEMENT.

B. With respect to all new pole construction, whether as new pole lines, additions to existing pole lines, or as replacement of existing poles, the following provisions shall prevail:

1. All poles jointly used shall be jointly owned.

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

301305554880001
301305554880001
301305554880001
16

5820130828002667
6020140822005586
6020140902003255

- 5 -

2. Both parties shall cooperate to the end that the use of poles taller than necessary shall be kept to a minimum.

3. As near as practicable, the construction of jointly used general distribution plant shall be divided equally between the two parties.

4. When a pole is to be installed, such pole shall be considered for JOINT USE at that time.

5. All new jointly used poles set on private property will be set by the Electric Company. Detailed provisions for handling private property poles are set forth in Appendix IX.

C. With respect to all poles that are to be or have been made JOINTLY OWNED POLES, the following provisions shall prevail:

1. The establishment and termination of joint ownership of poles shall be carried out as set forth in Appendices II and III.

2. Custodianship and maintenance of JOINTLY OWNED POLES shall be carried out as set forth in Appendices IV and V.

3. Each party will operate under its own franchise and such other ordinances that may apply.

ARTICLE V

POLE COSTS

The erection and maintenance costs of JOINTLY OWNED POLES shall be borne as detailed in Appendices VI and VII.

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

30130555488000_
301305554880001
301305554880001
17

5820130828002657
6020140822005286
6020140902003255

— 6 —

## ARTICLE VI

### RIGHTS-OF-WAY

A. While the parties hereto will cooperate as far as may be practicable, in obtaining rights-of-way for both parties for JOINTLY OWNED POLES, no guarantee is given by either to the other that it has or will obtain permission from property owners, municipalities, or others, for the use by the other party of any poles covered by this AGREEMENT. If objection is made by property owners, municipalities, or others to the use of poles by the other party to this AGREEMENT and the party against whom the complaint is made is unable to satisfactorily adjust the matter within a reasonable time, the first party may, at any time upon notice in writing to the other party, require that the other party shall, within ninety (90) days after the receipt of said notice, remove its ATTACHMENTS from such poles at its sole expense.

B. Should the other party fail to remove its ATTACHMENTS as herein provided, the first party may remove them at the other party's expense without any liability whatever for such removal or the manner of making it, for which expense the other party shall reimburse the first party on demand.

C. Where either party hereto has secured or will in the future secure easements, rights-of-way or other permission to install its facilities by any written or oral agreement, which agreement permits such rights to be extended to other public utility companies, this joint use AGREEMENT shall constitute the extension of such permission, right-of-way interest to the other party hereto with respect to such easements, rights-of-way or other permission to install facilities, both existing and those which will be secured, obtained or received in the future.

8/28/2013

8/22/2014

9/2/2014 12:00:00 AM

301305554880001
301305554880001

301305554880001
18

5820120828002667
6020140822005286

6020140902003255

- 9

## ARTICLE VII

### RIGHTS OF OTHER PARTIES

A.   If either of the parties has, prior to execution of this agreement, conferred upon others not parties to this agreement, by contract or otherwise, rights or privileges to use any poles covered by this agreement, nothing herein contained shall be construed as affecting such rights or privileges, and either party hereto shall have the right, by contract or otherwise, to continue and extend such existing rights or privileges.

B.   Subsequent to the execution of this AGREEMENT, and except as provided in Section D of this Article, all agreements or contracts covering the attachment by a third party of supply circuits to jointly used poles shall be made by the Electric Company with all rentals therefor being retained by said Company, and all agreements or contracts covering the attachments by a third party of communication wires or cables to jointly used poles shall be made by the Telephone Company with all rentals therefor being retained by said Company, all such agreements or contracts for attachments to jointly used poles being subject to the written approval of the other party to this AGREEMENT.

C.   For the purpose of this AGREEMENT, the ATTACHMENTS of any outside party as covered in Sections A and B of this Article, except those of a municipality or other public authority, shall be treated as ATTACHMENTS belonging to the granter, and the rights, obligations and liabilities hereunder of the granter in respect to such ATTACHMENTS shall be the same as if it were the actual OWNER thereof.

D.   Wires, cables or other ATTACHMENTS of a municipality or other governing body, such as fire alarm, police, or other like signal systems may be attached to JOINTLY OWNED POLES covered by this AGREEMENT,

- 9 -

providing such ATTACHMENTS are placed and maintained in accordance with the provisions of the current issue of National Electrical Safety Code and the specifications mentioned in Article III.

ARTICLE VIII

ASSIGNMENT OF RIGHTS

Except as otherwise provided in this AGREEMENT, neither party hereto shall assign or otherwise dispose of this AGREEMENT or any of its rights or interests hereunder, or in any of the JOINTLY OWNED POLES or rights-of-way covered by this AGREEMENT, to any firm, corporation or individual, without the written consent of the other party, provided, however, that nothing herein contained shall prevent or limit the right of either party to mortgage any or all of its properties, rights, privileges and franchises, or sell, lease or transfer any or all of them to another corporation organized for the purpose of conducting a business of the same general character as that of such party, or to enter into any merger or consolidation with such a corporation; and, in case of the foreclosure of such mortgage; or in case of such sale, lease, transfer, merger or consolidation, its rights and obligations hereunder shall pass to, and be acquired and assumed by, the purchaser on foreclosure, the transferee, lessee, assignee, merging or consolidating company, as the case may be; and provided, further, that subject to all terms and conditions of this AGREEMENT, either party may permit any corporation conducting a business of the same general character as that of such party, and owned, operated, leased and controlled by it, or associated or affiliated with it in interest or connecting with it, the use of all or any part of the space reserved hereunder on any pole covered by this AGREEMENT for the ATTACHMENTS used by such party in the conduct of its said business; and for the purpose of this AGREEMENT, all

8/28/2015
8/22/2014
9/2/2014 12:00:00 AM

301305554880001
501305554880001
301305554880001
20

5820130828002667
6020140622005286
6020140902003255

- 9 -

such ATTACHMENTS maintained on any such pole by the permission as afore-said of either party hereto shall be considered as ATTACHMENTS of the party granting such permission, and the rights, obligations and liabilities of such party under this AGREEMENT, in respect to such ATTACHMENTS, shall be the same as if it were the actual OWNER thereof.

## ARTICLE IX

### LIABILITY BETWEEN THE PARTIES

Whenever liability for damages for injuries to or death of persons other than employees of either party or for damages for injuries to property not belonging to either party arises out of the JOINT USE or joint ownership of poles, as provided for in this AGREEMENT, the liability for such injuries or damage as between the parties hereto shall be as follows:

A.  Each party shall be liable for one-half (1/2) of any damages for injuries to or death of persons other than employees of either party, and for one-half (1/2) of any damages for injury to property not belonging to either party, arising out of the location of a jointly used or owned pole, guy, anchor, guy stub or push brace (but not the ATTACHMENTS of either party) subject to the provisions of paragraph E of this Article.

B.  Except as provided in paragraph A of this Article, each party shall be liable for one-half (1/2) of any damages for injuries to or death of persons other than employees of either party, and for one-half (1/2) of any damages for injury to property not belonging to either party, arising out of the JOINT USE or joint ownership of poles and ATTACHMENTS which are the subject of this AGREEMENT, provided however, that in the event such damages are the result of (1) the sole negligence of either party or (2) the result of negligence of only one party jointly

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

3013055554880001
3013055554880001
3013055554880001
21

5820130328002667
6020140322005286
6020140902003255

- 10 -

with that of a stranger to this agreement, or (3) the result of the active or primary negligence of one party and only passive or secondary negligence of the other, then the sharing of liability provided for herein shall not be effective and the party who is solely negligent, jointly negligent with a stranger or primarily negligent as set forth in (1), (2) and (3) above, shall assume, as between the parties hereto, full responsibility for any liability arising from such negligence.

C. In the adjustment between the parties hereto of any claim for damages arising hereunder, the liability assumed hereunder by the parties shall include, in addition to the amounts paid to the claimant, all expenses incurred by the parties in connection therewith, which shall comprise costs, disbursements, and other proper charges and expenditures but shall not include attorney's fees.

D. If either party has given proper notice by mailing a Termination Notice as provided in Appendix III of its intention to terminate and relinquish its ownership in a JOINTLY OWNED POLE and has removed its ATTACHMENTS from said pole, within the period required by said paragraph, but the remaining party has not removed its ATTACHMENTS within said period, it is agreed that the remaining party shall indemnify and save harmless the party vacating such pole for and from all obligation, liability, damages, costs, expenses, or other charges incurred at any time after the expiration of a ninety (90) day period from the date of mailing of the Termination Notice, because of or arising out of the presence, location or condition of such pole or of any ATTACHMENTS of the remaining party thereon irrespective of any negligence on the part of the vacating party arising out of any previous joint ownership or JOINT USE of such pole.

E. If either party has removed its ATTACHMENTS from a pole in

8/26/2013
8/22/2014
9/2/2014 12:00:00 AM

301305554880001
301305554880001
301305554880001

5820130528002667
6020140822005286
6020140902003255

22

Case 3:14-cv-01152-SRU    Document 61-9    Filed 01/26/17    Page 16 of 61

- 11 -

connection with a replacement or relocation, and a period of ninety (90) days has elapsed from the date of a Transfer Notice, executed and mailed as provided in Paragraph 3 of Appendix V, the remaining party shall thereafter indemnify and save harmless the vacating party for and from all obligation, liability, damages, costs, expenses or other charges incurred at any time thereafter because of or arising out of the presence, location or condition of such pole or of any ATTACHMENTS of the remaining party thereon irrespective of any negligence on the part of the vacating party arising out of any previous joint ownership or JOINT USE of such pole.

### ARTICLE X

### TAXATION

Each party shall pay all taxes and assessments lawfully levied on its own attachments on all JOINTLY OWNED POLES. In the case of JOINTLY OWNED POLES, GUYS AND ANCHORS, each of the parties hereto shall report its interest therein as an undivided half interest.

### ARTICLE XI

### BILLS AND PAYMENT FOR WORK

Upon the completion of work performed hereunder by either party, the expense of which is to be borne wholly or in part by the other party, the party performing the work shall present to the other party within thirty (30) days after the completion of such work, an itemized statement of the cost of the same, and such other party shall within thirty (30) days after such statement is presented, pay its share to the party doing the work.

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

301305554880001
301305554880001
301305554880001
23

5820110828002667
6020140822005286
6020140902003255

- 12 -

## ARTICLE XII

### DEFAULTS

A.  If either party shall default in any of its obligations under this AGREEMENT and such default continues thirty (30) days after notice thereof in writing by the other party, the party not in default may forthwith suspend the rights of the party in default insofar as concerns the granting of further JOINT USE.  If such default shall continue for a period of sixty (60) days after such suspension, the party not in default may forthwith terminate this AGREEMENT so far as concerns the further granting of JOINT USE.

B.  If either party shall make default in the performance of any work which it is obligated to do under this AGREEMENT at its sole expense, the other party may elect upon thirty (30) days' notice in writing to do such work, and the party in default shall reimburse the other party for the cost thereof.  Failure on the part of the defaulting party to make such payment within sixty (60) days upon presentation of bills therefor shall, at the election of the other party, constitute a default under Section A of this Article.

## ARTICLE XIII

### EXISTING AGREEMENTS

All poles jointly owned by the parties at the effective date of this AGREEMENT shall thereafter be subject to the terms and provisions of this AGREEMENT, and the parties shall execute Acceptance Agreements acknowledging such joint ownership.  All existing AGREEMENTS or acceptances relating to joint use and/or joint ownership of poles heretofore entered into by the parties hereto are hereby cancelled.

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

501305554880001
301305554880001
301305554880001
24

5820130828002667
6020140822005286
6020140902003255

-- 13 --

## ARTICLE XIV

### TERM OF AGREEMENT

Subject to the provisions of Article XII herein, this AGREEMENT may be terminated so far as concerns further granting of JOINT USE by either party, at any time after the first day of January, 1961, upon one (1) year's notice in writing to the other party, provided, that if not so terminated, it shall continue in force thereafter until terminated by either party at any time upon one (1) year's notice in writing to the other party as aforesaid, and provided further that notwithstanding such termination, this AGREEMENT shall remain in full force and effect with respect to all poles jointly used by the parties at the time of such termination.

## ARTICLE XV

### WAIVER OR AMENDMENT OF TERMS OR CONDITIONS OF AGREEMENT

A.  The failure of either party to enforce, insist upon, or comply with any of the terms, conditions or provisions of this AGREEMENT, or its waiver of the same in any instance or instances, shall not be construed as general waiver or relinquishment of any such terms, conditions or provisions, but the same shall be and remain at all times in full force and effect.

B.  Any or all of the terms and provisions contained in this AGREEMENT may be amended by consent of both parties hereto.

C.  All Appendices attached to this AGREEMENT cover operating procedures and as such may be amended by the mutual consent and approval in writing of the Chief Engineer or a comparable executive of the Telephone Company in the Manhattan-Bronx-Westchester Area and of the Operating Superintendent of the Electric Company.  Additional Appendices covering operating procedures may be added as required by mutual consent and approval in writing by the aforesaid.

8/28/2013

8/22/2014

9/2/2014 12:00:00 AM

301305554880001
301305554880001

301305554880001
25

5820130828002667
6020140522005286

6020140902003255

-- 14 --

IN WITNESS WHEREOF each party has caused this AGREEMENT to be executed in its name and its corporate seal to be affixed thereto by its officer duly authorized thereunto as of the day and year first above written.

THE CONNECTICUT LIGHT AND POWER COMPANY

Attest _____

SECRETARY

By _____

(Seal)

NEW YORK TELEPHONE COMPANY

Attest _____

By _____

Vice President

APPROVED AS TO FORM
RALPH W. CROSS
V. P. & G. C.
By _____

APPENDICES

APPENDIX I - ACKNOWLEDGING JOINT OWNERSHIP

Joint Ownership of any pole shall be consummated by the execution of an ACCEPTANCE AGREEMENT signed by authorized representatives of the parties, a copy of which is attached hereto marked Exhibit B.

ACCEPTANCE AGREEMENTS shall be executed for the respective parties as follows:

For the New York Telephone Company:

By its Division Engineer-Outside Plant, or District Engineer-Outside Plant.

For The Connecticut Light and Power Company:

By its President, Vice President, Operating Superintendent, Transmission & Distribution Superintendent, Division Engineer or District Engineer.

APPENDIX II - ESTABLISHING JOINT OWNERSHIP

I — Whenever either party desires to acquire joint ownership in any pole of the other party, the party so desiring shall make application to that effect to the OWNER thereof. The OWNER shall within ten (10) days notify the applicant either of its approval or disapproval of said application or specify modifications desired.

A. In cases where one of the parties desires to establish joint ownership in a locality where it does not have a pole line, the costs, unless specifically agreed, shall be divided as follows:

(1) If an existing pole is suitable for JOINT USE, the applicant party shall pay the OWNER an amount equal to one-half the value of such pole in accordance with the then current Reciprocal Pole Valuation Schedule.

- 2 -

(2) If an existing pole is not suitable for JOINT USE, it shall be replaced by a pole that is suitable for JOINT USE, and the cost of such new pole shall be divided equally between the parties. The applicant party shall pay to the OWNER of the replaced pole the full amount of the then value of the replaced pole in accordance with the then current Reciprocal Pole Valuation Schedule.

B. In cases where joint ownership is to be established as a substitute for separate ownership of poles in existing pole lines located on the same highway, the costs, unless otherwise specifically agreed, shall be divided as follows:

(1) If a pole of one party is suitable for JOINT USE, it shall become jointly owned and the OWNER of the pole so used shall be paid by the other party an amount equal to one-half the then value of such pole, less one-half the then value of the pole abandoned, in accordance with the then current Reciprocal Pole Valuation Schedule.

(2) If the pole of neither party is suitable for JOINT USE, a new pole suitable for JOINT USE shall be placed and each party shall bear an equal share of the cost of the new pole in accordance with the then current Reciprocal Pole Valuation Schedule.

C. In any of the above cases the party last removing its attachments from a pole to be removed shall remove the pole at its own expense.

II - Whenever either party is about to erect a new pole in which it is willing to permit joint ownership and in which the other party

8/28/2013
9/22/2014
9/2/2014 12:00:00 AM

301305554880001
301305554880001
301305554880001
28

5820130828002657
6020140822005286
6020140902003255

- 3 -

may desire to acquire an interest, it shall notify the other party in writing and submit its plan showing the proposed location and amount of space it requires for its own purposes and shall offer joint ownership in such new pole. Upon receipt of such notice, the other party shall promptly reply in writing, stating whether or not it desires joint ownership then or at a later date and shall specify its requirements. If it is agreed that said pole shall be jointly owned hereunder, when such pole becomes jointly occupied the then value of such new pole, unless otherwise specifically agreed, shall be divided equally between the parties in accordance with the then current Reciprocal Pole Valuation Schedule.

III  -  Rearrangement costs shall be borne by the party for whose benefit such rearrangement work is done unless otherwise specifically agreed.

IV  -  Transfer costs shall be borne by the party owning the facilities transferred, unless otherwise specifically agreed.

APPENDIX III - TERMINATION OF JOINT OWNERSHIP

If either party wishes to terminate and relinquish its ownership in any pole covered by this AGREEMENT and thereby be relieved of all obligations and responsibilities therefor, it shall give notice thereof by mailing to the other party's District Engineer a Termination Notice, in duplicate, in form set forth in Exhibit B hereto attached, signed by an authorized person, ninety (90) days in advance of the date on which said termination is to become effective, and shall remove its own and its licensees' ATTACHMENTS therefrom within the said ninety (90) days. In case the other party also desires to terminate its

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

301505554880001
301305554880001
301305554880001

5820130828002657
6020140822005286
6020140902003255

– 4 –

ownership in said pole, it shall so indicate on both copies of the Termination Notice. The duplicate shall be signed by an authorized person and mailed to the originating party and such other party shall remove its own and its licensees' attachments therefrom within said period of ninety (90) days. The party last removing its ATTACHMENTS shall remove the pole or poles at its own expense. "An authorized person" shall mean any person authorized to execute an ACCEPTANCE AGREEMENT, as set forth in Appendix I.

APPENDIX IV – CUSTODIANSHIP

1.  By mutual agreement between the parties, one shall act as CUSTODIAN of each pole. In determining the custodianship of a pole, due consideration shall be given to relative location of maintenance facilities and relative importance of plant so as to insure, as far as practicable, the rendering of proper service with minimum maintenance costs.

2.  The general policy shall be to maintain a relatively equal balance of custodianship between the two parties.

APPENDIX V – MAINTENANCE OF POLES

1.  The CUSTODIAN shall arrange to have all JOINTLY OWNED POLES, guys and pole braces in its custody inspected at mutually agreed intervals and shall submit a list of all poles, guys and pole braces to be replaced to the other party.

2.  In damage cases from outside sources involving JOINTLY OWNED POLES, the CUSTODIAN, wherever practicable, shall care for the pole work.

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

301305554880001
301305554880001
301305554880001
30

5820130828002667
6020140822005286
6020140902003255

-- 5 --

3.    Replacement or Relocations.

    A.  The party proposing replacement or relocation shall notify the other party in form set forth as Exhibit F to this Agreement of its intention to replace or relocate any jointly owned pole with a pole of suitable size and class.

    B.  Upon completion of pole replacement or relocation, a Transfer Notice, in form set forth as Exhibit G to this Agreement, shall be executed by an authorized person for the party replacing or relocating the pole and sent by mail to the District Engineer of the other party. If the attachments of the party executing and sending such Transfer Notice have been transferred, the Transfer Notice shall so state. "An authorized person" shall mean any person authorized to execute an ACCEPTANCE AGREEMENT, as set forth in Appendix I.

    C.  The Transfer Notice shall be returned to the originating party upon completion of transfer of its attachments by the other party.

    D.  The last party to remove its attachments will remove the old pole and care for sidewalk repairs at its own expense.

APPENDIX VI - DIVISION OF MAINTENANCE COSTS OF
               JOINTLY OWNED POLES

1.    The expense of JOINTLY OWNED POLES, guy and pole brace maintenance, relocation and replacement due to any cause, not created by either party shall be borne equally by the parties unless otherwise indicated on the ACCEPTANCE AGREEMENT covering the pole involved.

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

301305554380001
301305554680001
301305554880001
31

5820130828002667
6020140522005286
6020140902003255

- 6 -

2. ~~In any case where a pole taller than an existing JOINTLY OWNED POLE~~ ~~is required and the EXISTING pole is not being replaced for~~ ~~maintenance reasons, the party requiring the additional strength~~ ~~shall replace the pole at its own expense.~~ Each party will ~~transfer its own ATTACHMENTS at its own expense.~~ The new pole will remain jointly owned.

3. Either party may use the unoccupied space on a pole provided such use still allows the standard separation. In case a pole taller than an existing JOINTLY OWNED POLE is required by either party, and the existing pole is not being replaced for maintenance reasons, the replacement cost shall be borne as follows:

A. If neither party is occupying space outside of its allocated space as shown on Exhibit D, the party requiring the taller pole shall bear the entire cost of replacing the pole, unless it is agreed that both parties require a taller pole, in which event both parties shall share equally the cost of replacing the pole.

B. If one party is occupying space outside of its allocated space, that party shall bear the entire cost of replacing the pole.

C. If both parties are occupying space outside of their allocated space, both parties shall share equally the cost of replacing the pole.

In all cases each party shall transfer its ATTACHMENTS at its own expense and the new pole will remain jointly owned.

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

301305554880001
301305554680001
301305554880001
32

5820130828002657
6020140822005286
6020140902003255

— 7 —

4. An exception shall be made to the preceding paragraphs 2 and 3 as follows: If, in the establishment of joint ownership under Appendix II, it is known and noted on the ACCEPTANCE AGREEMENT that any pole, either existing or to be newly erected, may not be sufficiently tall or of sufficient strength to meet the future requirements of either or both parties but will meet the requirements for the time being, the pole shall, when a taller or stronger pole becomes necessary, be replaced and the cost of replacing the pole shall be divided equally between the parties.

5. In case the special requirements of one of the parties for its sole benefit necessitates the relocation of any of the poles, guys or pole braces covered by this AGREEMENT, or the placing of additional guys or pole braces, such party shall bear the entire cost of such relocations and additions, the total cost of transferring or handling the attachments of the other party in connection therewith, and of transferring or handling its own ATTACHMENTS.

6. Each party shall maintain in good order and repair at its own expense, its own wires, fixtures and appurtenances on all JOINTLY OWNED poles covered by this AGREEMENT. All work done on any JOINTLY OWNED poles or on any attachment thereon shall be performed in a manner which will not unduly interfere with the service, wires, fixtures and appurtenances of the other party hereto.

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

301305554880001
801305554880001
301305554880001
33

5820130828002657
6020140822005286
6020140802003255

- 8 -

7. Unless otherwise provided in the specific ACCEPTANCE AGREEMENT, each party shall perform the tree trimming necessary, in its judgment, to properly protect its own wires and attachments.

8. When a pole is being replaced for maintenance reasons and a pole taller than a normal pole is required for the sole benefit of one party, then that party shall bear the cost of the excess height.

APPENDIX VII - RECIPROCAL POLE VALUATION SCHEDULE

1. The Reciprocal Pole Valuation Schedule attached hereto and marked Exhibit C shall be the basis for computing pole costs for new poles or replaced poles. The Reciprocal Pole Valuation Schedule may be revised from time to time as deemed necessary.

APPENDIX VIII - SECURING RIGHTS-OF-WAY AND EASEMENTS

1. The party which is to place the poles shall secure the necessary permission to place poles and guys and in new developments arrange for initial tree clearance.

2. Each party shall secure for itself such easements as its operating practices may require.

3. On accepted town highways, joint field inspection shall be made to determine division of cost for initial tree clearance.

APPENDIX IX - PRIVATE PROPERTY POLES

1. The Telephone Company will purchase a half interest in new jointly used poles in accordance with the then current Reciprocal Pole Valuation Schedule.

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

301305554880001
301305554880001
301305554880001
34

S820130828002657
6020160822005286
6020140902003255

- 9 -

2.     Each company will make arrangements with the customer in accordance with its own tariffs or rate practices.

APPENDIX X - SPACE ALLOCATIONS OF JOINTLY USED POLES

1.     Exhibit D attached shows normal space allocations on jointly used poles. In the determination of normal space occupancy, vertical runs on a pole and street lamp installations will not be considered. It is recognized that when code requirements can be met, the Telephone Company may place attachments below the normal space allocation shown on Exhibit D. These space allocations shall not be construed to require general reconstruction of plant existing on the effective date of this AGREEMENT until made necessary by the future requirements of either company.

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

301305554280001
301305554880001
301305554880001
35

5820130828002667
6020140322005286
6020140902003255

# NEW YORK TELEPHONE COMPANY

140 WEST STREET, NEW YORK 7, N.Y.

JOHN D COGO
... ... ... ...                                    EXCHANGE 4-4000

March 30, 1956.

MR. W.W. FORMAN, Vice President
Connecticut Light and Power Company
Box 2010
Hartford 1, Connecticut

Dear Mr. Forman:

In connection with the proposed General Joint Use Agreement between your company and mine, our negotiators have reached an agreement regarding the handling of new poles or existing poles now used jointly. These proposals which will apply to new and existing poles are as follows:

New Poles

1. New jointly used poles placed on the highway may be set by either party and one half (1/2) interest will be purchased by the party not setting the pole in accordance with the then Reciprocal Pole Valuation Schedule.

2. New jointly used poles placed on private property will be set by the Electric Company and one half (1/2) interest will be purchased by the Telephone Company in accordance with the then Reciprocal Pole Valuation Schedule. Each company will make arrangements with the customer on the cost of such placement in accordance with its own tariffs or practices.

Existing Poles

1. A one half (1/2) interest in existing highway poles owned by the Electric Company will be purchased by the Telephone Company over a five year period at the approximate rate of one fifth (1/5) of the poles per year starting in 1956. The cost per pole will be $30.30. It is agreed that no rental will be paid by the Telephone Company during the five year period for any of these poles.

2. A one half (1/2) interest in existing highway poles owned by the Telephone Company will be purchased by the Electric Company during 1956. The cost per pole will likewise be $30.30 [._____] [_____]

3. All private property poles used jointly are presently either owned or maintained by the customer or the Electric Company. Joint ownership of these poles will be accomplished in the following manner.

8/28/2013
9/22/2014
9/2/2014 12:00:00 AM

301305554880001
301305554880001
301305554880001
36

S820130328002657
6020140322005206
6020140902003255

- 2 -

(a) When customer owned poles become defective, ownership in these poles may be transferred to the Electric Company by means of a bill of sale. If ownership is transferred these poles will be replaced at the joint cost of both companies and the cost shared equally in accordance with the then Reciprocal Pole Valuation Schedule. At such time as one pole in a continuous line of poles under these terms is replaced, the entire line will be taken over by the Electric Company and the poles will be made joint at no cost to the Telephone Company.

(b) Where the customer has furnished the pole and transferred interest to the Electric Company, these will be handled as outlined in Item (a).

(c) Where the Electric Company owns the pole and the customer has contributed to the cost, these poles will be made jointly owned in the same manner as the Electric Company operates with the Southern New England Telephone Company. Poles will be made joint by the Telephone Company purchasing a one half (1/2) interest at the rate of $15.00 per pole regardless of age.

(d) Where the Electric Company owns the pole and the customer has made no contribution to the cost, these poles will be handled in the same manner as now private property poles. The poles to be made joint by Telephone Company purchase of a one half (1/2) interest at one half (1/2) the present value in accordance with the then Reciprocal Pole Valuation Schedule.

4. A one half (1/2) interest in all existing private property poles currently jointly used will be purchased in accordance with the above provisions during 1956 by the Telephone Company. No rental shall be paid by the Telephone Company subsequent to December 31, 1955.

I approve of these proposals and have signed two copies of this letter. If you concur, will you please sign one copy in the space provided below and return it to me for our files.

With this phase of the negotiations completed, I believe we can proceed rapidly with the preparation and approval of the General Joint Use Agreement which, if you agree, shall be made effective as of January 1, 1956.

Very truly yours,

Vice President & General Manager

J.A.Roberts:TP

CONNECTICUT LIGHT AND POWER COMPANY

w. _____
Vice President .

8/28/2013                    301305554580001                    5820150828002667
8/22/2014                    301305554880001                    6020140822005286
9/2/2014 12:00:00 AM         301305554880001                    6020140902003255
                                   37

RECIPROCAL POLE V. JAT ON SCHEDULE

N.Y. TEL. CO. & CONN. LIGHT & POWER CO.

EFFECTIVE  FEB. 1, 1955

RECIPROCAL POLE VALUATION

PLANT DEPT.

| AGE LIFE | POLES | | | | | | GUYS | | | | | | | | | | | | ROD & ANCHOR CAST | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| YEARS | 25 | 30 | 35 | 40 | 45 | 50 | STUB | POLE TREE | ANC | STUB | POLE TREE | ANC | STUB | POLE TREE | ANC | STUB | POLE TREE | ANC | 3/4" | 1" & 1-3/4" |
| | 45.00 | 60.00 | 75.00 | 90.00 | 115.00 | 141.00 | 11.00 | 13.00 | 24.00 | 16.00 | 19.00 | 30.00 | 19.00 | 22.00 | 37.00 | 26.00 | 31.00 | 54.00 | 30.00 | 35.00 | 41.00 |
| 24 | 43.20 | 55.60 | 72.95 | 86.40 | 109.44 | 135.36 | 10.56 | 12.48 | 23.04 | 15.36 | 18.24 | 28.80 | 18.24 | 21.12 | 35.52 | 24.96 | 29.76 | 51.84 | 30.00 | 33.60 | 40.72 |
| 23 | 33.00 | 52.50 | 69.92 | 82.80 | 104.58 | 129.72 | 10.12 | 11.95 | 22.08 | 14.72 | 17.48 | 27.60 | 17.48 | 20.26 | 34.04 | 23.92 | 28.52 | 49.60 | 30.00 | 32.20 | 43.24 |
| 21 | 37.00 | 51.04 | 66.80 | 79.20 | 100.32 | 126.00 | 9.60 | 11.04 | 21.12 | 14.08 | 16.72 | 26.42 | 16.72 | 19.36 | 32.56 | 22.88 | 27.28 | 47.52 | 22.00 | 30.00 | 47.00 |
| 20 | 35.72 | 48.72 | 60.24 | 75.60 | 95.76 | 118.44 | 9.24 | 10.92 | 20.16 | 13.44 | 15.96 | 25.20 | 15.96 | 19.40 | 31.00 | 21.84 | 25.04 | 45.36 | 21.00 | 29.40 | 37.40 |
| 19 | 30.09 | 43.40 | 60.60 | 72.00 | 91.20 | 112.00 | 8.80 | 10.40 | 19.20 | 12.80 | 15.20 | 24.00 | 15.20 | 17.60 | 29.60 | 20.80 | 25.04 | 43.20 | 21.00 | 23.00 | 37.60 |
| 17 | 31.00 | 41.00 | 57.75 | 68.40 | 86.64 | 107.16 | 8.36 | 9.63 | 18.24 | 12.15 | 14.44 | 22.80 | 14.44 | 16.72 | 28.12 | 19.72 | 23.56 | 41.00 | 19.00 | 26.60 | 35.00 |
| 17 | 32.24 | 39.44 | 51.60 | 61.20 | 77.52 | 95.88 | 7.92 | 9.35 | 17.28 | 11.52 | 13.68 | 21.60 | 13.68 | 15.84 | 26.64 | 19.72 | 22.32 | 38.88 | 18.00 | 25.00 | 33.00 |
| 15 | 27.52 | 37.12 | 48.64 | 57.60 | 72.91 | 90.24 | 7.48 | 8.80 | 15.32 | 10.00 | 12.92 | 20.40 | 12.90 | 14.96 | 25.16 | 17.68 | 21.00 | 35.72 | 17.00 | 23.00 | 31.00 |
| 13 | 23.23 | 34.60 | 45.65 | 54.00 | 68.46 | 84.60 | 6.60 | 7.90 | 15.36 | 9.86 | 11.48 | 18.00 | 11.40 | 13.20 | 22.20 | 15.60 | 24.00 | 32.40 | 16.00 | 22.40 | 30.00 |
| 13 | 21.00 | 31.40 | 42.00 | 50.40 | 63.04 | 78.05 | 6.16 | 7.00 | 13.44 | 8.00 | 11.40 | 18.00 | 11.40 | 13.20 | 22.20 | 15.60 | 24.00 | 29.24 | 15.00 | 21.00 | 23.00 |
| 11 | 22.28 | 29.16 | 30.02 | 46.80 | 59.23 | 73.92 | 5.72 | 6.76 | 12.48 | 6.33 | 10.64 | 16.88 | 10.64 | 18.32 | 20.72 | 14.56 | 17.36 | 30.24 | 14.00 | 19.60 | 30.00 |
| 10 | 20.44 | 27.00 | 34.40 | 43.20 | 54.72 | 67.68 | 5.28 | 6.24 | 11.52 | 6.33 | 15.60 | 9.82 | 11.44 | 19.24 | 13.52 | 16.12 | 28.08 | 13.00 | 18.20 | 30.00 | |
| 11 | 18.00 | 20.22 | 33.66 | 39.60 | 59.73 | 62.04 | 5.20 | 6.26 | 11.52 | 7.68 | 9.12 | 14.40 | 9.12 | 10.96 | 17.75 | 12.48 | 14.08 | 25.00 | 12.00 | 10.00 | 22.00 |
| 10 | 17.00 | 23.20 | 30.60 | 36.00 | 45.60 | 55.47 | 4.62 | 5.72 | 10.56 | 7.00 | 8.36 | 13.20 | 8.36 | 9.68 | 16.28 | 11.44 | 13.44 | 23.75 | 11.00 | 10.00 | 20.00 |
| 9 | 16.20 | 20.40 | 27.25 | 32.40 | 41.04 | 50.40 | 4.40 | 5.20 | 9.60 | 6.40 | 7.60 | 12.00 | 7.60 | 8.00 | 16.00 | 10.40 | 12.40 | 21.60 | 10.00 | 14.00 | 10.00 |
| 8 | 14.76 | 18.55 | 24.32 | 28.90 | 36.48 | 45.72 | 3.90 | 4.60 | 8.64 | 5.76 | 6.04 | 10.00 | 6.84 | 7.92 | 13.32 | 9.36 | 11.16 | 19.44 | 9.00 | 12.00 | 16.00 |
| 7 | 12.65 | 10.04 | 21.28 | 25.20 | 31.92 | 37.48 | 3.52 | 4.16 | 7.68 | 5.12 | 6.05 | 9.66 | 6.08 | 7.04 | 11.04 | 8.32 | 9.92 | 17.28 | 8.00 | 11.00 | 15.00 |
| 5 | 10.28 | 13.02 | 18.24 | 21.60 | 27.36 | 33.84 | 3.00 | 3.64 | 6.72 | 4.48 | 5.24 | 8.40 | 5.22 | 6.06 | 10.36 | 7.20 | 8.60 | 15.12 | 7.00 | 9.00 | 15.00 |
| 4 | 9.00 | 11.60 | 15.20 | 18.00 | 22.80 | 28.09 | 2.64 | 2.60 | 4.80 | 3.25 | 6.00 | 3.00 | 4.80 | 7.20 | 8.24 | 7.44 | 10.05 | 6.00 | 9.00 | 11.00 | |
| 3 | 6.00 | 8.20 | 12.76 | 14.40 | 18.24 | 22.56 | 1.76 | 2.08 | 3.84 | 2.56 | 3.04 | 4.30 | 3.04 | 3.52 | 5.72 | 4.16 | 4.75 | 8.64 | 4.00 | 9.00 | 7.00 |
| 2 | 5.16 | 6.05 | 9.12 | 10.00 | 13.00 | 16.92 | 1.32 | 1.56 | 2.09 | 1.92 | 2.28 | 3.60 | 2.28 | 2.64 | 4.44 | 3.12 | 3.72 | 6.48 | 3.00 | 6.00 | 5.04 |
| 1 | 3.00 | 4.50 | 6.00 | 7.60 | 9.12 | 11.80 | .29 | 1.00 | 1.52 | 1.28 | 1.50 | 2.40 | 1.52 | 1.76 | 2.95 | 2.03 | 2.48 | 4.32 | 2.00 | 4.00 | 5.04 |
| | 1.72 | 2.85 | 3.00 | 3.00 | 4.00 | 5.00 | .21 | .62 | .63 | .64 | .75 | 1.20 | .76 | .08 | 1.23 | 1.04 | 1.24 | 2.15 | 1.00 | 1.00 | 1.00 |

| NEW POLES RELOCATED POLE | 47.00 | 64.00 | 60.00 | 101.00 | 126.00 | 151.00 | MISCELLANEOUS WORK | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | REDITTING-DROPPING IN | STRAIGHTENING-JACKING UP | RELOCATING - TRANSFERRING | GUARD GUYING - CUTTING |
| | | | | | | | 30.00 | 19.00 | 60.00 | 9.00 |

RECIPROCAL POLES SHALL BE CONSIDERED HAVING REMAINING LIFE OF AT LEAST SIX YEARS FROM THE DATE OF TREATMENT.

9/2/2014 12:00:00 AM

8/28/2013
8/22/2014

30130554980001
30130554980001
30130554980001

6020140902003255
6820130828002667
6020140822005286



8/28/2015

8/22/2014

9/2/2014 12:00:00 AM

301305554880001
301305554880001
301305554880001
39

5820130828002667
6020140822005286
6020140902003255

TERMINATION NOTICE

IN CONNECTION )
WITH )        NYT Co. _____        AUTH. No. _____
ACCEPTANCE )     CL&P Co. _____      . W. O. No. _____
AGREEMENT )
NUMBERS )

                                                    Date

FROM:

TO: _____
        Name            Title

Pole numbers and location:

        The undersigned hereby terminates and relinquishes as of

_____, 19 ___ all ownership, right, title and interest

in the pole(s) described above. This notice is given under and in accordance

with the provisions of Appendix III of the General Agreement for the joint use

of poles in force between the Companies, dated, January 1, 1955.

                        (NEW YORK TELEPHONE COMPANY)

                        By _____

                        (THE CONNECTICUT LIGHT AND POWER COMPANY)

                        By _____

Remarks:

Date _____

                                EXHIBIT E

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM        301305554880001        5820130828002657
                            301305554880001        6020140822005286
                    301305554880001                6020140902003255
                        40

SUBJECT:  REPLACEMENTS OR RELOCATIONS OF POLES.    WORK ORDER NO._____

DATE_____

IN ACCORDANCE WITH THE PROVISIONS OF APPENDIX V, PARAGRAPH 3 (a)
OF THE JOINT POLE AGREEMENT BETWEEN NEW YORK TELEPHONE COMPANY AND THE
CONNECTICUT LIGHT AND POWER COMPANY DATED, JANUARY 1, 1956, THIS IS TO
ADVISE THAT IT IS THE INTENTION OF _____ TO
(REPLACE) (RELOCATE) THE FOLLOWING POLE(S) WITH (a) POLE(S) OF SUITABLE SIZE AND
CLASS.

THIS WORK IS NECESSARY_____

UPON COMPLETION OF THE WORK WE PROPOSE TO BILL YOU FOR YOUR SHARE OF
THE COST.

| LOCATION | POLE NO. | PROPOSED WORK | REMARKS |
|----------|----------|---------------|---------|
|          |          |               |         |
|          |          |               |         |
|          |          |               |         |

SHEET____ OF ____

TITLE_____

EXHIBIT F

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

5013055548850001
301305554880001
301305554880001

5820130828002657
6020140822005266
6020140902003255

TRANSFER NOTICE

Date_____

FROM:

_____

TO_____
· Name                              Title

Dear Sir:

Please transfer your company's attachments on Poles No._____

_____

_____

located on_____ Street,_____, Conn.

between_____ and _____

This Company's Attachments (have) (have not) been removed.  Upon completion

of work return to originator.

(THE CONNECTICUT LIGHT AND POWER COMPANY)

_____
Name                              Title

Work completed by_____ Date _____

Remarks:

(NEW YORK TELEPHONE COMPANY)

_____
Name                              Title

EXHIBIT G

8/28/2013                           301305554380001                     5820130828002669
8/22/2014                           301305554880001                     6020140822005286
9/2/2014 12:00:00 AM          301305554880001                    6020140902003255
42

NEW YORK TELEPHONE COMPANY
WESTCHESTER AREA

MEMORANDUM

The following is a brief summary of the Agreement covering the joint use of poles and notification forms used between the Connecticut Light and Power Company, hereinafter called Electric Company, and the New York Telephone Company.

New Poles

(1) New jointly used poles placed on the highway may be set by either company and one half interest purchased by the company not setting the pole in accordance with the Reciprocal Pole Valuation Schedule.

(2) All new jointly used poles on private property will be set by the Electric Company and one half interest purchased by the New York Telephone Company as in item 1 above.

Custodianship

By mutual consent between companies one should act as custodian of each pole. The custodianship set-up between companies is as follows:

(1) New York Telephone Company

Custodian of all poles on highway and private property on Lake Avenue and Field Point Road and all area west of Lake Avenue and Field Point Road to the New York State boundary.

(2) Electric Company

Custodian of all poles on highway and private property east of Lake Avenue and Field Point Road to the Mianus River (Southern New England Telephone Company boundary).

5/28/2013
8/22/2014
9/2/2014 12:00:00 AM

301305554880001
301305554880001
301305554880001
43

582013082800267
6020140922005286
6020140902003255

- 2 -

Acquire Joint Ownership (New York Telephone Company places pole).

Joint ownership is established by preparation and execution of an Acceptance Agreement (Exhibit A) and a sketch showing the actual location of the poles involved.   (Exhibit B)

Four (4) copies of each are prepared and forwarded to the Electric Company.  After approval and signature by Electric Company two (2) copies are returned to the New York Telephone Company for file.

A Custom Work Order (Exhibit C) or Adjustment Report (Exhibit D) is then issued for billing of Electric Company.

Termination Notice (New York Telephone Company to terminate ownership)

Four (4) copies of Termination Notice (Exhibit E) are prepared and forwarded to the Electric Company.  After acceptance and signature by Electric Company two (2) copies are returned for New York Telephone Company file.  A Routine Order or Adjustment Report is issued for correction of New York Telephone Company records.  (No billing involved on Termination of Ownership).

Replacement and Relocation of Existing Poles (The New York Tel. Co. to do work)

Prepare two (2) copies of Replacement or Relocation of Poles (Exhibit F).  Forward one copy to Electric Company and retain one copy for file.  If no reply is received from the Electric Company within five working days the Electric Company approval of the proposed work is assumed.

Upon completion of the pole replacement, the Construction Foreman prepares and forwards Notice of Completion of Replacement, (Exhibit G) to the Engineering Department.  The Engineering Department then issues Transfer Notice (Exhibit H) in quadruplet and forwards all copies to the Electric Company.  Upon receipt of same the Electric Company stamps one copy 'receipt acknowledged, dates, signs and returns the copy to New York Telephone Company. Upon completion of transfer of its attachments and removal of old pole the Electric Company returns the original copy of Transfer Notice after noting date the field work was actually completed.

Billing

The present Reciprocal Pole Valuation Schedule (Exhibit J) is used for computing pole costs for new or replaced poles, anchors and other pole fixtures (the Reciprocal Pole Valuation Schedule may be revised from time to time as deemed necessary).  All billing of the Electric Company by the

8/28/2013
6/22/2014
9/2/2014 12:00:00 AM

301305554880001
301305554880001
301305554880001

5820110828002667
6020140522005286
6020140902003255

- 3 -

<u>Billing</u>   (Cont'd)

New York Telephone Company is accomplished by means of an "A" Custom Work Order or Adjustment Report.  If an "A" Custom Work Order is involved the number should be shown on the Routine Order in the appropriate space in the upper right hand corner.  The "A" Custom Work Order is prepared and distributed in accordance with existing practice.

     (This memorandum written assuming New York Telephone Company does actual pole work, if Electric Company does field work, procedure is same with Electric Company originating forms and billing New York Telephone Company).

I.E. Goddard

8/28/2013                301305554880001                5820130826002667

8/22/2014                301305554880001                6020140822005286

9/2/2014 12:00:00 AM          301305554880001             6020140902003255
45

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

301305554880001
301305554880001
301305554880001
46

5820130828002667
6020140822005286
6020140902003255

 **THE CONNECTICUT LIGHT AND POWER COMPANY**

*A NORTHEAST UTILITIES COMPANY*

August 3, 1972

Mr Joseph P McKeehan, Vice President
New York Telephone Company
140 West Street
New York, New York  10007

Subject:  Revision of Combined Reciprocal
          Pole and Guy Valuations Table

This letter will serve to confirm our meeting scheduled for
Tuesday, August 15, 1972, 9:30 am, to be held at our CL&P
building located at 330 Railroad Avenue in Greenwich, Connec-
ticut.  Following is the agenda for the meeting:

          Revision of combined reciprocal pole
          and guy valuations table

          Review of billing procedures

          Review of emergency trouble reporting
          and reconstruction

          Review of area custody for joint poles       *O.K.*

Attached, for your review prior to the meeting, are copies of
the revised Combined Reciprocal Pole and Guy Valuations Table
and the Rate of Depreciation Table.

Thomas L Shiveley
Superintendent, Transmission & Distribution

cc:  Messrs ELJohnson, REMiller, CCYoung - Berlin
          RFGretsch, WRRuhlmann - Danbury
          JJWalsh - Greenwich

AUG 9  REC'D

8/28/2013                     301305554880001                     5820150828002657
8/22/2014                     301305554880001                     6020140822003286
9/2/2014 12:00:00 AM        30130556480001                      6020140902003255
47



THE CONNECTICUT LIGHT AND POWER COMPANY
A NORTHEAST UTILITIES COMPANY

| | | | |
|---|---|---|---|
| TO | STAFF DEPARTMENT HEADS | | May 23, 1972 |
| | DIVISION MANAGERS | | "J" |
| | PLANT SUPERINTENDENTS OF OPERATION | | |
| | | | |
| FROM | Mr. R. E. Miller - Berlin | | |
| | | | |
| SUBJECT | Operating Instruction No. 6600, Miscellaneous Mutual Agreements | | |
| | with the Southern New England Telephone Company | | |

Forwarded, herewith, is revised Exhibit No. 11 - Combined
Reciprocal Pole and Guy Valuations Table - for Operating
Instruction No. 6600 - Miscellaneous Mutual Agreements with
the Southern New England Telephone Company.
                                         for all bills rendered on and after
This revised table is effective/July 1, 1972.

As we no longer install pole mounts, the entire miscellaneous
work category has been removed from this revised Exhibit No. 11.

Present Exhibit No. 8 - Pole Mounts, effective May 6, 1959
and Exhibit No. 11B - Combined Reciprocal Pole and Guy Valuations,
effective June 1, 1963, should be removed and destroyed.

CCY/dmk

8/28/2013                                301305554880001                       5820130828002667
3/22/2014                                301305554380001                       6020140822005286
9/2/2014 12:00:00 AM          301305554880001                  6020140902003255
                                                48

OPERATING INSTRUCTION NO. 6600
Effective: July 1, 1972
Cancels: Exhibit No. 8 of May 6, 1959
         and Exhibit No. 11B of
         June 1, 1963
EXHIBIT NO. 11

**July 1, 1972**

**COMBINED RECIPROCAL POLE AND GUY VALUATIONS**
(For Billing Between (The CL&P Co. and EILCo.) and SNET Co. Only)

**GUYS**

| | 5K | | | | 10M | | | | 15M | | | ROD & ANCHOR ONLY | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | STUB | POLE | ANC. | STUB | POLE | ANC. | STUB | POLE | ANC. | 1" R.I. | 3/4" | 1" |
| | 33.00 | 99.00 | 91.00 | 66.00 | 138.00 | 100.00 | 68.00 | 148.00 | 157.00 | 121.00 | 69.00 | 123.00 |

**REPLACEMENT OF EXISTING JOINT COMBINED POLES AND GUYS**

**POLES**

| 25' | 30' | 35' | 40' | 45' | 50' | 55' | 60' |
|---|---|---|---|---|---|---|---|
| 180.00 | 213.00 | 257.00 | 292.00 | 345.00 | 379.00 | 445.00 | 515.00 |

**POLES**

| ITEM | 25' | 30' | 35' | 40' | 45' | 50' | 55' | 60' |
|---|---|---|---|---|---|---|---|---|
|  | 154.00 | 178.00 | 208.00 | 234.00 | 274.00 | 302.00 | 357.00 | 420.00 |
| 1 | 147.84 | 170.68 | 199.68 | 224.64 | 263.04 | 289.92 | 342.72 | 403.20 |
| 2 | 141.68 | 163.76 | 191.36 | 215.28 | 252.08 | 277.84 | 328.44 | 386.40 |
| 3 | 135.52 | 156.64 | 183.04 | 205.92 | 241.12 | 265.76 | 314.16 | 369.60 |
| 4 | 129.36 | 149.52 | 174.72 | 196.56 | 230.16 | 253.68 | 299.88 | 352.80 |
| 5 | 123.20 | 142.40 | 166.40 | 187.20 | 219.20 | 241.60 | 285.60 | 336.00 |
| 6 | 117.04 | 135.28 | 158.08 | 177.84 | 208.24 | 229.52 | 271.32 | 319.20 |
| 7 | 110.88 | 128.16 | 149.76 | 168.48 | 197.28 | 217.44 | 257.04 | 302.40 |
| 8 | 104.72 | 121.04 | 141.44 | 159.12 | 186.32 | 205.36 | 242.76 | 285.60 |
| 9 | 98.56 | 113.92 | 133.12 | 149.76 | 175.36 | 193.28 | 228.48 | 268.80 |
| 10 | 92.40 | 106.80 | 124.80 | 140.40 | 164.40 | 181.20 | 214.20 | 252.00 |
| 11 | 86.24 | 99.68 | 116.48 | 131.04 | 153.44 | 169.12 | 199.92 | 235.20 |
| 12 | 80.08 | 92.56 | 108.16 | 121.68 | 142.48 | 157.04 | 185.64 | 218.40 |
| 13 | 73.92 | 85.44 | 99.84 | 112.32 | 131.52 | 144.96 | 171.36 | 201.60 |
| 14 | 67.76 | 78.32 | 91.52 | 102.96 | 120.56 | 132.88 | 157.08 | 184.80 |
| 15 | 61.60 | 71.20 | 83.20 | 93.60 | 109.60 | 120.80 | 142.80 | 168.00 |
| 16 | 55.44 | 64.08 | 74.88 | 84.24 | 98.64 | 108.72 | 128.52 | 151.20 |
| 17 | 49.28 | 56.96 | 66.56 | 74.88 | 87.68 | 96.64 | 114.24 | 134.40 |
| 18 | 43.12 | 49.84 | 58.24 | 65.52 | 76.72 | 84.56 | 99.96 | 117.60 |
| 19 | 36.96 | 42.72 | 49.92 | 56.16 | 65.76 | 72.48 | 85.68 | 100.80 |
| 20 | 30.80 | 35.60 | 41.60 | 46.80 | 54.80 | 60.40 | 71.40 | 84.00 |
| 21 | 24.64 | 28.48 | 33.28 | 37.44 | 43.84 | 48.32 | 57.12 | 67.20 |
| 22 | 18.48 | 21.36 | 24.96 | 28.08 | 32.88 | 36.24 | 42.84 | 50.40 |
| 23 | 12.32 | 14.24 | 16.64 | 18.72 | 21.92 | 24.16 | 28.56 | 33.60 |
| 24 | 6.16 | 7.12 | 8.32 | 9.36 | 10.96 | 12.08 | 14.28 | 16.80 |

301305554880001

301305554880001

301305554880001
49

5820130828002657

6020140822005286

6020140902003255

Case 3:14-cv-01152-SRU   Document 61-9   Filed 01/26/17   Page 43 of 61



COMBINED RECIPROCAL POLE & GUY VALUATIONS RATE OF DEPRECIATION TABLE
(THE CL&PCo. AND HELCO) AND THE SNET CO.

JULY 1, 1972



**Southern New England Telephone**

Burton H. Anderson
District Plant Engineer - Staff

300 George Street
New Haven, Connecticut 06506
Phone (203) 771-2321

August 16, 1972

Mr. Joe McKeehan
New York Telephone Company
Room 1400
160 Broadway
New York, New York    10038

Dear Mr. McKeehan:

In accordance with our telephone conversation this morning, I have enclosed our new Combined Reciprocal Pole and Guy Valuations Table. It is generally self-explanatory, however, I will be happy to cover any phase of it with you.

I've also enclosed a copy of our latest Working Arrangement Regarding The General Agreement which now provides for electric company payments of our shifting costs when pole replacement is for the sole benefit of the electric company. It also provides for the reverse when pole replacement is for our sole benefit. A Table of Shifting Valuations is also included to show the amounts actually billed. You may wish to discuss this further with us during your visit. I hope to see you soon.

Sincerely yours,

District Plant Engineer, Staff

BHA/mes
Enclosures

Case 3:14-cv-01152-SRU Document 61-9 Filed 01/26/17 Page 45 of 61

## COMBINED RECIPROCAL POLE AND GUY VALUATIONS
### FOR C.L.&P., H.E.E. CO. AND U.I. CO. ONLY

EFFECTIVE JULY 1, 1972

| AGE YEARS | REM. LIFE | POLES 25' | 30' | 35' | 40' | 45' | 50' | 55' | 60' | GUYS 8M STUB | POLE | ANC. | 10M STUB | POLE | ANC. | 16M STUB | POLE | ANC. | ROD & ANCHOR ONLY R.E. | 3/4" | 1" |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NEW | 30 | 154.00 | 179.00 | 203.00 | 234.00 | 274.00 | 302.00 | 357.00 | 420.00 | 33.00 | 99.00 | 91.00 | 46.00 | 138.00 | 100.00 | 48.00 | 144.00 | 157.00 | 121.00 | 68.00 | 123.00 |
| 6 | 24 | 147.84 | 170.88 | 199.68 | 224.64 | 263.04 | 289.92 | 342.72 | 403.20 | | | | | | | | | | | | |
| 7 | 23 | 141.68 | 163.76 | 191.36 | 215.28 | 252.08 | 277.84 | 328.44 | 386.40 | | | | | | | | | | | | |
| 8 | 22 | 135.52 | 156.64 | 183.04 | 205.92 | 241.12 | 265.76 | 314.16 | 369.60 | | | | | | | | | | | | |
| 9 | 21 | 109.36 | 149.52 | 174.72 | 196.56 | 230.16 | 253.68 | 299.88 | 352.80 | | | | | | | | | | | | |
| 10 | 20 | 123.20 | 142.40 | 166.40 | 187.20 | 219.20 | 241.60 | 285.60 | 336.00 | | | | | | | | | | | | |
| 11 | 19 | 117.04 | 135.28 | 158.08 | 177.84 | 208.24 | 229.52 | 271.32 | 319.20 | | | | | | | | | | | | |
| 12 | 18 | 110.88 | 128.16 | 149.76 | 168.48 | 197.28 | 217.44 | 257.04 | 302.40 | | | | | | | | | | | | |
| 13 | 17 | 104.72 | 121.04 | 141.44 | 159.12 | 185.32 | 205.36 | 242.76 | 285.60 | | | | | | | | | | | | |
| 14 | 16 | 98.56 | 113.92 | 133.12 | 149.76 | 175.36 | 193.28 | 228.48 | 268.80 | | | | | | | | | | | | |
| 15 | 15 | 92.40 | 106.80 | 124.80 | 140.40 | 164.40 | 181.20 | 214.20 | 252.00 | | | | | | | | | | | | |
| 16 | 14 | 86.24 | 99.68 | 116.48 | 131.04 | 153.44 | 169.12 | 199.92 | 235.20 | | | | | | | | | | | | |
| 17 | 13 | 80.08 | 92.56 | 108.16 | 121.68 | 142.48 | 157.04 | 185.64 | 218.40 | | | | | | | | | | | | |
| 18 | 12 | 73.92 | 85.44 | 99.84 | 112.32 | 131.52 | 144.96 | 171.36 | 201.60 | | | | | | | | | | | | |
| 19 | 11 | 67.76 | 78.32 | 91.52 | 102.96 | 120.56 | 132.88 | 157.08 | 184.80 | | | | | | | | | | | | |
| 20 | 10 | 61.60 | 71.20 | 83.20 | 93.60 | 109.60 | 120.80 | 142.80 | 168.00 | | | | | | | | | | | | |
| 21 | 9 | 55.44 | 64.08 | 74.88 | 84.24 | 98.64 | 108.72 | 128.52 | 151.20 | | | | | | | | | | | | |
| 22 | 8 | 49.28 | 56.96 | 66.56 | 74.83 | 87.68 | 96.64 | 114.24 | 134.40 | | | | | | | | | | | | |
| 23 | 7 | 43.12 | 49.84 | 58.24 | 65.52 | 76.72 | 84.56 | 99.96 | 117.60 | | | | | | | | | | | | |
| 24 | 6 | 36.96 | 42.72 | 49.92 | 56.16 | 65.76 | 72.48 | 85.68 | 100.80 | | | | | | | | | | | | |
| 25 | 5 | 30.80 | 35.60 | 41.60 | 46.80 | 54.80 | 60.40 | 71.40 | 84.00 | | | | | | | | | | | | |
| 26 | 4 | 24.64 | 28.48 | 33.28 | 37.44 | 43.84 | 48.32 | 57.12 | 67.20 | | | | | | | | | | | | |
| 27 | 3 | 18.48 | 21.36 | 24.96 | 28.08 | 32.88 | 35.24 | 42.84 | 50.40 | | | | | | | | | | | | |
| 28 | 2 | 12.32 | 14.24 | 16.64 | 18.72 | 21.92 | 24.16 | 28.56 | 33.60 | | | | | | | | | | | | |
| 29 | 1 | 6.16 | 7.12 | 8.32 | 9.36 | 10.96 | 12.08 | 14.28 | 16.80 | | | | | | | | | | | | |

### REPLACEMENT OF EXISTING JOINT POLES

| POLES 25' | 30' | 35' | 40' | 45' | 50' | 55' | 60' |
|---|---|---|---|---|---|---|---|
| 180.00 | 213.00 | 257.00 | 292.00 | 345.00 | 379.00 | 445.00 | 515.00 |

Effective with this table billing for resetting or dropping in, straightening or jacking, relocating or trenching, ground bracing or keying, and pole counts have been eliminated.

9/2/2014 12:00:00 AM
8/28/2013
9/22/2014
3013055498001
52
9013055498001
3013055498001
6020140902003255
5820130828002677
6020140822005286

WORKING ARRANGEMENT REGARDING THE GENERAL AGREEMENT

It has been agreed by and between the Connecticut Operating Companies of Northeast Utilities (Connecticut Light and Power Company and Hartford Electric Light Company) and the Southern New England Telephone Company that each Company will accept billing from the other for the other's shifting expenses incurred under the following conditions:

1. Shifting may be billed for by the EL Company on multiple-pole replacements necessitated by the addition of a telephone cable attachment.

2. Shifting may be billed for by the Telephone Company on multiple-pole replacements necessitated by EL MGN conversions or circuit overbuilds. An MGN conversion is the conversion of a delta or wye distribution system to a wye multigrounded distribution system and an overbuild being the addition of conductors to a line for additional primary circuits.

Not to be included in this agreement are pole replacements, the requirement for which was not created by either party or replacements agreed to as being for mutual benefit. Also not to be included are poles replaced as to accommodate additional Telephone equipment such as load pots, control or access points, distribution or cross connecting terminals, line concentrators, repeater or carrier equipment, or EL equipment such as transformers, cut-outs, streetlights, capacitors, fuses, or other similar equipment unless this equipment is being placed in conjunction with Telephone Company cable placement or EL Company MGN conversion, or circuit overbuild.

The billing will be based on each Company's most current average cost for shifting basic attachments. The items to be billed for by the Power Company are primary circuits (each, single- or 3-phase) and secondary circuits (includes single-neutral wire, cabled or open-wire secondary). The items to be billed for by the Telephone Company are cable-strand attachments (multiple-line wire and through strand to be considered the same as cable). Excluded will be Power Company streetlights, transformers, breakers, guys, service drops, and other similar items. Also excluded will be telephone terminals, drop loops, load-coil cases, control points, cross boxes and other similar items.

This billing is to be in accordance with the General Agreement, that is when pole replacements are due wholly to the requirements of one Company and the poles are replaced on location, the amount to be billed will be reduced by the ratio of the then value of the poles involved to the reproduction value new of said poles.

It is the intent of this agreement that each Company be allowed to recoup its shifting expenses on multiple-pole replacements required by the needs of the other party hereto as previously defined.


B. H. Anderson
District Plant Engineer-Staff
Southern New England Telephone Company

R. E. Miller
Superintendent of Transmission & Dist.
Connecticut Light and Power Company


J. A. Cooney
General Superintendent of Trans. & Dist.
Hartford Electric Light Company

Signed - February 1, 1972
Effective - March 1, 1972

8/28/2013                        301305554880001                5620130828002667
8/22/2014                        301305554880001                6020140822005286
9/2/2014 12:00:00 AM        301305654880001                6020140902003255
                                                    53

## TABLE OF SHIFTING VALUATIONS

| | SNET | | | | | CI&P OR HEL CO | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 1 CA | 2 CA | 3 CA | 4 CA | | PRIMARY OVER 5000 V | PRIMARY UNDER 5000 V | SECONDARY |
| NEW | | | | | | | | |
| 1 | 25.69 | 51.38 | 77.07 | 102.76 | | 130.00 | 80.00 | 47.00 |
| 2 | | | | | | | | |
| 3 | | | | | | | | |
| 4 | | | | | | | | |
| 5 | | | | | | | | |
| 6 | 24.66 | 49.32 | 73.98 | 98.64 | | 124.80 | 76.80 | 45.12 |
| 7 | 23.63 | 47.26 | 70.89 | 94.52 | | 119.60 | 73.60 | 43.24 |
| 8 | 22.61 | 45.22 | 67.83 | 90.44 | | 114.40 | 70.40 | 41.36 |
| 9 | 21.58 | 43.16 | 64.74 | 86.32 | | 109.20 | 67.20 | 39.48 |
| 10 | 20.55 | 41.10 | 61.65 | 82.20 | | 104.00 | 64.00 | 37.60 |
| 11 | 19.52 | 39.04 | 58.56 | 78.08 | | 98.80 | 60.80 | 35.72 |
| 12 | 18.50 | 37.00 | 55.50 | 74.00 | | 93.60 | 57.60 | 33.84 |
| 13 | 17.47 | 34.94 | 52.41 | 69.88 | | 88.40 | 54.40 | 31.96 |
| 14 | 16.44 | 32.88 | 49.32 | 65.76 | | 83.20 | 51.20 | 30.08 |
| 15 | 15.41 | 30.82 | 46.23 | 61.64 | | 78.00 | 48.00 | 28.20 |
| 16 | 14.39 | 28.78 | 43.17 | 57.56 | | 72.80 | 44.80 | 26.32 |
| 17 | 13.36 | 26.72 | 40.08 | 53.44 | | 67.60 | 41.60 | 24.44 |
| 18 | 12.33 | 24.66 | 36.99 | 49.32 | | 62.40 | 38.40 | 22.56 |
| 19 | 11.30 | 22.60 | 33.90 | 45.20 | | 57.20 | 35.20 | 20.68 |
| 20 | 10.28 | 20.56 | 30.84 | 41.12 | | 52.00 | 32.00 | 18.80 |
| 21 | 9.25 | 18.50 | 27.75 | 37.00 | | 46.80 | 28.80 | 16.92 |
| 22 | 8.22 | 16.44 | 24.66 | 32.88 | | 41.60 | 25.60 | 15.04 |
| 23 | 7.19 | 14.38 | 21.57 | 28.76 | | 36.40 | 22.40 | 13.16 |
| 24 | 6.17 | 12.34 | 18.51 | 24.68 | | 31.20 | 19.20 | 11.28 |
| 25 | 5.14 | 10.28 | 15.42 | 20.56 | | 26.00 | 16.00 | 9.40 |
| 26 | 4.11 | 8.22 | 12.33 | 16.44 | | 20.80 | 12.80 | 7.52 |
| 27 | 3.08 | 6.16 | 9.24 | 12.32 | | 15.60 | 9.60 | 5.64 |
| 28 | 2.06 | 4.12 | 6.18 | 8.24 | | 10.40 | 6.40 | 3.76 |
| 29 | 1.03 | 2.06 | 3.09 | 4.12 | | 5.20 | 3.20 | 1.88 |

Effective  March 1, 1972

8/28/2013

8/22/2014

9/2/2014 12:00:00 AM

301305554880001

301305554880001

301305554880001

5820130828002667

6020140822005286

6020140902003255





**NORTHEAST UTILITIES**

THE CONNECTICUT LIGHT AND POWER COMPANY
WESTERN MASSACHUSETTS ELECTRIC COMPANY
HOLYOKE WATER POWER COMPANY
NORTHEAST UTILITIES SERVICE COMPANY
NORTHEAST NUCLEAR ENERGY COMPANY

General Offices • Selden Street, Berlin, Connecticut

P.O. BOX 270
HARTFORD, CONNECTICUT 06141-0270
(203) 665-5000

June 16, 1989

Mr. Joseph Martinelli
Area Operations Manager
OSP Administration
New York Telephone Company
Room 100
117 Stevens Avenue
Valhalla, New York 10595

Re: Development of a Flat Rate Billing Procedure
    between New York Telephone Company and
    The Connecticut Light and Power Company

Dear Joe:

As detailed briefly in our recent telephone conversation, CL&P
would like to reach an agreement with New York Telephone on
the following items:

o   The standardization on a 40 ft. pole (with certain
    exceptions).

o   Adopt flat rate billing.

o   Initiate new Pole Data Sheets and Shift Notices.

By way of background, the Joint Committee of Public Utility
Representatives, of which NYT used to be a part, has been
working on the above items for approximately 1 1/2 years.
Recently, we achieved agreement between the power companies
and the two other telephone companies in Connecticut –
namely, Southern New England and Woodbury Tel.  The details
of these new arrangements are as follows.

8/28/2013                      301305554880001              5820150828002557

8/22/2014                      301305554680001              6020140822005266

9/2/2014 12:00:00 AM          301305554880001              6020140902003265
55

Development of a Flat Rate Billing Procedure
between New York Telephone Company and
The Connecticut Light and Power Company
Page 2


A. 40 ft. Standard Pole

The companies agreed that a 40 ft. pole would be the
standard for joint use. Some 35 ft. poles will continue
to be installed where there is no expectation of ever
having three-phase power or additional telephone company
requirements. However, in all cases the billing for the
pole will be the same. That is $325.


B. Additional Height

The company desiring an additional 5 ft. or more
exclusive use of pole over the 40 ft. standard would pay
and additional $100. for this space.


C. Intercompany Billing

There no longer will be any intercompany billing for
anchors, plant sacrifice, shifting, and pole removals.


D. New Joint Billing Forms

In order to carry out this new flat rate billing process,
we have developed new versions of the Joint Ownership
Notice (Pole Data Sheet) and Shift and Repair Notice.
Copies are attached for your review and comment.


Attached also for your information and possible use is  copy of
our Distribution Standard's page DTR04.045 – Joint Pole Space
Allocation Guide. I'm also enclosing a copy of the May 9, 1989
minutes of the Joint Utility Committee Meeting which describes
some of the aspects of the flat rate billing process.

Development of a Flat Rate Billing Procedure
between New York Telephone Company and
The Connecticut Light and Power Company
Page 3


When you have had a chance to review all of this information,
please contact me and we can arrange a meeting or work out the
details over the phone of consummating a new agreement between
CL&P and NYT.  In addition, I hope that you will be able to send
a representative to our next Joint Utility Committee Meeting
which will take place in the Meriden area (NU is the host) on
September 12, 1989.


Very truly yours,


Paul F. Ryder
Staff Engineer


PFR:sh

Enclosures

8/28/2013

8/22/2014

9/2/2014 12:00:00 AM

301305554880001
57

5820130528002667

6020140322005286

6020140902003255



ED365-1 Rev. 6-76

| Pole Length In Feet | Pole Ownership NU/TEL Note 1 | A Normal Setting Depth Note 2 | B Communication Maximum Height | | C Northeast Minimum Height | | D Northeast Maximum Space | |
|---|---|---|---|---|---|---|---|---|
| | | | Conn | Mass | Conn | Mass | Conn | Mass |
| 35 | 35/35 | 6'0" | 21'2" | 21'8" | 24'6" | 25'0" | 4'6" | 4'0" |
| 40 | 40/40 | 6'0" | 23'8" | 24'2" | 27'0" | 27'6" | 7'0" | 6'6" |
| 40 | 40/35 | 6'0" | 21'2" | 21'8" | 24'6" | 25'0" | 9'6" | 9'0" |
| 40 | 35/40 | 6'0" | 26'2" | 26'8" | 29'6" | 30'0" | 4'6" | 4'0" |
| 45 | 45/45 | 6'6" | 25'11" | 26'2" | 29'3" | 29'6" | 9'3" | 9'0" |
| 45 | 45/40 | 6'6" | 23'8" | 23'11" | 27'0" | 27'3" | 11'6" | 11'3" |
| 45 | 45/35 | 6'6" | 21'2" | 21'8" | 24'6" | 25'0" | 14'0" | 13'6" |
| 50 | 50/50 | 7'0" | 28'2" | 28'8" | 31'6" | 32'0" | 11'6" | 11'0" |
| 50 | 50/45 | 7'0" | 25'11" | 26'2" | 29'3" | 29'6" | 13'9" | 13'6" |
| 50 | 50/40 | 7'0" | 23'8" | 24'2" | 27'0" | 27'6" | 16'0" | 15'6" |
| 50 | 50/35 | 7'0" | 21'2" | 21'8" | 24'6" | 25'0" | 18'6" | 18'0" |

NOTES

1. 40/35 indicates a 40' pole where Telephone Co pays for and occupies space as if it were a 35' joint pole.

2. Pole setting depth is the responsibility of the custodian.

3. Dimensions B, C or D may be adjusted by mutual agreement between the joint owners to avoid a pole changeout if field and code conditions permit.

JOINT POLE SPACE ALLOCATION GUIDE

NORTHEAST UTILITIES | DESIGN & APPLICATION STANDARD | DTR 04.045 | 3

8/28/2013

8/22/2014

9/2/2014 12:00:00 AM

301305554880C01

301305554880001

301305554880001

5820110828002687

6020140822005256

6020140902003255

07/20/88     09:08:46     *POLE DATA SHEET*                    PAGE X OF X
                    *JOINT OWNERSHIP NOTICE*

            THE CONNECTICUT LIGHT AND POWER COMPANY      AU      CL&P

JNT CO ID/DIST     XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
ELECT W.O.         DL5T8A44                  TEL W.O.     99999999
JOB TITLE          XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
JOB ADDR           XXXXXXXXXXXXXXXXXXXXXXXXXX    TOWN   XXXXXXXXXXXXXXXXX
                   XXXXXXXXXXXXXXXXXXXXXXXXXXX
ELEC CO DIST       XXXXXXXXXXXXXXXXX    ELEC DIST NO XXX
TEL CO REP         XXXXXXXXXXXXXXXXX    ELEC CO REP  XXXXXXXXXXXXXXX
MAP NO             XXXXXXXX            DATE SERVICE DESIRED XX/XX/XX
AGRMT DATE         XX/XX/XX            FIELD AGREEMENT NO XXXXXXX
HIGWAY PROJ NO     XXXXXXXX            PERCENT REIMB XXX
PERMIT NO
===================================================================

    STR CODE XXXX    STREET NAME XXXXXXXXXXXXXXXXXXXXXXXX   CO TO PAY XXXX

| PHYS NO./ | PRMT CODE | CUST | ITEM DESC | EL % | EBH | REQ ADD HT | NON OWN ATTACH | ADN | TEL REF POLE NO | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |
| XXXXXXX | X | X | 354 POLE | XXX | XX | X | XXX | X | XXXXXX | $XXXXXX |

ELECTRIC CO APPROVAL  _____   DATE  _____

TELEPHONE CO APPROVAL  _____   DATE  _____

AREA  _____ | _____    EXCHANGE  _____ |_____    TOWN CODE  _____ |_____   ___

8/28/2013                          301305554880001               5820130528002667
9/22/2014                          301305554880001               6020140822005256
9/2/2014 12:00:00 AM        301305554880001                      6020140902003255
                                   59

```
05/24/89  13:04:30                                          PAGE X OF X
CMOS-RPT11
                      S H I F T  A N D  R E P A I R  N O T I C E

   TO              SOUTHERN NEW ENGLAND TEL CO - WATERBURY

   FROM            CL&PCO - WATERBURY

   ELECT W.O.      DL5T8A44              TEL W.O.     99999999
   TEL CO REP      XXXXXXXXXXXXXXXXXX    ELEC CO REP  XXXXXXXXXXXXXXXX
   AGRMT DATE      XX/XX/XX              FIELD AGREEMENT NO XXXXXXXX
   MAP NO          XXXXXXXX              DATE SERVICE DESIRED XX/XX/XX
```

THE CONNECTICUT LIGHT AND POWER COMPANY - WATERBURY
HAS PERFORMED  THE WORK INDICATED AT THE LOCATIONS LISTED

STREET NAME      XXXXXXXXXXXXXXXXXXXXXXXXX  TOWN XXXXXXXXXXXX
NEAREST STREET  XXXXXXXXXXXXXXXXXXXXXXXX

| PHYS NO./ | ITEM DESC | EBH | CO REQ ADD HT | NON OWN ATTACH | TEL REF POLE NO | COMMENTS |
|---|---|---|---|---|---|---|
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |
| XXXXXXX | 354 POLE | XX | XXXX | XXX | XXXXXX | |

UPON COMPLETION OF YOUR ASSOCIATED WORK,  PLEASE RETURN A COPY OF
THIS NOTICE TO:  CL&PCO - WATERBURY


                COMPLETED BY _____    DATE _____


        8/28/2013                    301305554880001              5820130828002657
        8/22/2014                    501305554880001              6020140822005286
    9/2/2014 12:00:00 AM         301305554880001              6020140902003255

JOINT UTILITY COMMITTEE MEETING

SKIPPERS RESTAURANT

MAY 9, 1989

HOST: CITY OF NORWALK THIRD TAXING DISTRICT

ATTENDEES:

| | |
|---|---|
| Paul Ryder | Northeast Utilities |
| Ray Asselin | City of NOrwalk |
| Ray Ceniccola | Sammons Communications |
| Joseph Cutrona, Jr. | Comcast - Middletown |
| Robert Drain | Northeast Utilities |
| Ed Schneider | Northeast Utilities |
| Ron Heaphy | Northeast Utilities |
| Mike Holmes | Wallingford Electric |
| Bob Bailey | Laurel Cablevision |
| Jeff Kirsch | Laurel Cablevision |
| Mark Harris | South Norwalk Electric Works |
| Jim Anderson | South Norwalk Electric Works |
| Duncan Loomis | United Illuminating |
| Carl Gagliardi | SNET |
| Bob Gagliardi | United Illuminating |
| Jim Nation | United Illuminating |
| Luis Gonzalez | SNET |
| Bill Ostrum | United Illuminating |
| Warren Ott | City of Groton, Dept. of Utilities |
| Charles F. Rossoll | Norwich DPU |
| Arthur F. Thursen | Woodbury Telephone |
| Dick Dwyer | Woodbury Telephone |
| Martin Hallier | AT&T |
| Jim Novaco | Heritage Cablevision |
| Peter Polubiatko | Norwich DPU |
| Bob Bouffard | SNET |

1. The minutes of the January meeting were accepted.

D05-19/9335G

8/28/2013                301305554880001                5820130828002557
8/22/2014                301305554880001                6020140822005286
9/2/2014 12:00:00 AM          301305554880001          6020140902003256

- 2 -

2.   OLD BUSINESS

A.   FLAT RATE BILLING

After much negotiation and discussion, agreement was reached on a
flat rate billing of $325.00 per pole, per involved utility.  This
rate is based upon a standard 40' pole, and includes joint guying.
The rate will apply even in cases where poles of less than 40' in
length are installed.  This rate will also apply to poles of greater
length than 40', providing the additional height (over 40') is shared
equally by the electric and telephone companies.  In instances where
additional height has been requested by one of the utilities for its
exclusive use, that utility will be billed an additional $100.00 for
that space.

There will no longer be any intercompany billing for anchors, plant
sacrifice, shifting, and pole removals.

The agreement will apply to all bills rendered on or after August 1,
1989, regardless of when field negotiations were made, or when the
pole is set.

Note:     Included as Attachment I to these minutes is a copy of the reciprocal
          billing agreement, signed by SNET.  Attachment II is a copy which
          should be signed, dated, and returned to Bob Bouffard by all
          utilities.

B.   NET BILLING

Ron Heaphy, of CL&P, and Carl Gagliardi, of SNET, will continue to
pursue the possibility of Net Billing.

C.   CONNECTICUT DOT USE ON MUNICIPAL GAIN

The Connecticut Department of Transportation (DOT) has a project
underway to install a computerized, integrated traffic control system
on US-1 between Greenwich and New London.  Much of this installation
is taking place within the so-called Municipal Gain of the communi-
cations space and, in many cases, does not meet NESC (Rule 235)
requirements.

A representative of CONNDOT was invited to the meeting, but did not
attend.  Ed Schneider, CL&P, researched this subject regarding the
NESC (Rule 235) requirements, and his notes and a drawing accompany
these minutes.  (Attachment III, A & B).

D05-19/9335G

- 3 -

The Committee voted to send a letter to the DOT outlining our position regarding this matter. Bob Bouffard will draft the letter and provide the members with a copy.

D. POLE INSPECTION AND REINFORCEMENT

Jim Nation (United Illuminating) reported on UI's 1988 Pole Inspection and Reinforcement Program conducted by OSMOS. The results were as follows:

| | | |
|---|---|---|
| Poles tested | — | 3,700 |
| Poles requiring replacement | ~ | 210 |
| Poles identified as reinforceable | — | 159 |
| Poles reinforced | — | 137 |
| (22 of the reinforceable poles were replaced, based on field conditions). | | |
| Average age of reinforced poles | — | 26 years |
| Cost to reinforce poles | ~ | $365.00 each |

After ten (10) years, the reinforced poles will be reinspected and retreated, at an estimated cost of $50.00 each (1989 dollars). It is anticipated that treated poles will have an additional ten years of life from that point in time.

Based upon this information, it appears that United Illuminating is spending $415.00 per pole to gain an additional twenty (20) years of life. UI's average cost to replace a pole is $1100.00.

Paul Ryder (Northeast Utilities) reported on NU's 1988 program in which 47,953 poles were inspected, and 1,619 were rejected. Of these, 448 were classified as reenforceable. NU personnel judged that 172 were not reenforceable for various reasons. NU actually reinforced 195 poles in 1988, with the remainder to be carried over to the 1989 program. SNET shared in the cost of reinforcing six (6) of these poles.

E. CATV NOTIFICATION OF OVERHEAD EXTENSIONS

Some of the cable TV companies are complaining that they are not informed when poles are set for extensions to new customers. The first time they hear of it is when they have a call for cable service. The electric companies felt that, since SNET is a representative in dealings with CATV companies, SNET should be responsible for informing them of new pole extensions.

D05-19/9335G

8/28/2013                          301305554880001                      5820130828002667

8/22/2014                          301305554880001                      6020140622005286

9/2/2014 12:00:00 AM          301305554880001                      6020140902003255

- 4 -

Bob Bouffard explained that CATV companies are notified via the SNET shift notices when poles are set. He will explore the possibility of an advance notification procedure, and report his findings at the next meeting.

3.  NEW BUSINESS

   A.  PROXIMITY OF GAS AND ELECTRIC METERS

   Paul Ryder reported regarding some research he had done on the various codes regarding the proximity of gas and electric meters. The NEC and NESC are not clear on the subject; however, the Federal Gas Code requires that gas meters and regulators be at least three feet from sources of ignition.

   Pete Polubiatko said that the 3-foot dimension was quoted by the DPUC in a recent memo received from them. As a practical matter, this 3-feet should be measured horizontally between the adjacent sides of the meters (or gas regulator if closer), or a vertical line from the side if they are not at the same elevation.

   B.  JOINT LINE AGREEMENT

   A subcommittee was formed to update and modernize the 1930s vintage Joint Line Agreements (Attachment IV - list of subcommittee members). Bob Bouffard will chair the subcommittee, and distribute retyped copies of the agreements to members. The first meeting of the subcommittee is scheduled for June 14, 1989, in Room #803, 555 Long Wharf Drive, New Haven. All members should plan to attend or send a representative. For that meeting, members should bring an annotated copy of the agreement as a starting point for discussions.

4.  NEXT MEETING

   The next meeting of the Joint Utility Committee will be held on September 12, 1989, in the Meriden-Wallingford area, with Northeast Utilities as the host. Please forward any agenda items to Bob Bouffard, SNET, 555 Long Wharf Drive, New Haven, CT. 06511, 8th floor, or by telephone at 553-7218.

Respectfully submitted



R. A. Bouffard
Secretary



005-19/9335G

8/28/2013                                    301305554880001                           5820130828002657
8/22/2014                                    301305554860001                           6020140322005286
9/2/2014 12:00:00 AM           301305554880001                      6020140902003255
                                                    64

ATTACHMENT I

FLAT RATE RECIPROCAL BILLING AGREEMENT

TUESDAY, MAY 9, 1989

The Joint Committee of Public Utility Representatives unanimously adopted the flat rate billing concept for jointly-owned poles on Tuesday, May 9, 1989. The rate will be $325.00 per individual utility, based upon a standard 40' pole including joint guying. If additional height beyond a standard 40' pole is to be shared by the involved utilities, the $325.00 rate will apply. If additional height beyond a standard 40' pole is to be for the exclusive use of a single utility, the rate for that utility will be increased by $100.00 per affected pole.

The rates will apply to new installations, replacements, and purchase interest transactions. Billing will no longer occur for plant sacrifice, shifting, and straight removal transactions.

The rates will become effective for billings generated on and after August 1, 1989, by replacing the Combined Reciprocal Pole and Guy Valuations Table with this document.

NAME: Robert A. Bouffard

TITLE: Engineer Liaison and Member,
Joint Committee of Public Utility

COMPANY: Southern New England Telephone

DATE: 5-18-89

NAME: Patrick J. Binneen

TITLE: District Staff Manager - Engineering

COMPANY: Southern New England Telephone

DATE: 5/22/89

D05-17/9324G

8/25/2013
8/22/2014
9/2/2014 12:00:00 AM

301305554880001
201305554880001
301305554880001
65

5820130828002667
6020140822005256
6020140902003255

Attachment III A

The National Electrical Safety Code does not recognize the existence of a "municipal gain". In Rule 235, it specifies separation of facilities based on whether or not the equipment is considered a power supply conductor or a communications conductor. Traffic signal attachments can be considered either power or communications conductors, depending on the voltage of the conductors and the level of power transmitted by the conductors. In all cases, the highest communications conductor and the lowest power supply conductor must be separated by at least 40".

If the voltage does not exceed 400 volts to ground or 750 volts between any two points of the circuit, and the power transmitted does not exceed150 watts, or when operating at less than 150 volts, regardless of the power being transmitted, the conductors are considered to be communications conductors and they should be installed in the communications company space on the pole. Traffic signal parallel conductors installed in this space must be at least 40" below the lowest power company attachment and separated from other communications facilities as required.

If the voltage or power levels mentioned above are exceeded, the traffic signal conductors are considered to be power supply conductors of that voltage and they should be installed in the power company space on the pole. Traffic signal parallel conductors installed in this space must be at least 40" above the highest communications attachment and at least 16" below the lowest power company secondary attachment. (The code goes on to recommend a vertical separation of not less than 40" between these conductors if they are operated by different companies. – this often is not possible due to congested poles.) Traffic Signal lateral conductors must be separated from the lowest power company secondary attachment by 6". The existing PUCA Docket 11714 specifies this distance at 12", which would not meet the requirements of the NESC. The remainder of the dimensions shown in Docket 11714 are correct. This Docket specifies, within itself, that the requirements of the NESC shall also be followed. Attached is a drawing showing attachment of traffic signal facilities in the power company space. The dimensions shown in this drawing meet or exceed the requirement of both the NESC and PUCA Docket 11714.

– 1 –

8/28/2013

8/22/2014

9/2/2014 12:00:00 AM

301305554880001

301305554880001

301305554880001
66

5820130828002667

6020140822004286

6020140902003255

Attachment III 3

This Standard meets or exceeds the requirements of the National Electrical Safety Code, ANSI C2–1987 (RULE 235) and the State of Connecticut PUCA Docket 11714.



8/28/2013

8/22/2014

9/2/2014 12:00:00 AM

101305554680001

301305554880001.

301305554880001

5820130328002667

6020140822005286

6020140902003255

67

ATTACHMENT IV

## SUBCOMMITTEE ESTABLISHED BY THE
## JOINT UTILITY COMMITTEE
## FOR THE PURPOSE OF
## REDRAFTING OF THE JOINT LINE AGREEMENT

| NAME | COMPANY | TEL NO. | FAX NO. |
|------|---------|---------|---------|
| ROBERT BOUFFARD | SOUTHERN NEW ENGLAND TELEPHONE | 553-7218 | 553-3767 |
| PAUL RYDER | NORTHEAST UTILITIES | 634-5134 | 634-5878 |
| RAY ASSELIN | 3rd TAXING DIST.-CITY OF NORWALK | 866-9271 | |
| MIKE HOLMES | WALLINGFORD ELECTRIC | 265-1593 | |
| JIM ANDERSON | SO. NORWALK ELECTRIC WORKS | 866-3366 | |
| DUNCAN LOOMIS | UNITED ILLUMINATING | 787-7382 | 777-6182 |
| WARREN OTT | CITY OF GROTON, DEPT. OF UTILITIES | 445-8571 | |
| DICK DWYER | WOODBURY TELEPHONE | 263-3709 | 266-4688 |
| MARTIN HALLIER | AT&T CO. | 269-2567 | |
| PETER POLUBIATKO | NORWICH DEPT. OF PUBLIC UTILITIES | 887-2555 | |

D05-19/9335G

8/28/2013
8/22/2014
9/2/2014 12:00:00 AM

301305554880001
301305554880001
301305554880001
68

5820130828002557
6020140822005296
6020140902003255